**Case No. 20-55845**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

ART TOBIAS

Plaintiff-Appellee

v.

DANIEL EAST, L.A. School Police Officer, No 959

Defendant-Appellant

and

CITY OF LOS ANGELES, et al.,

Defendants

---

On Appeal from the United States District Court
for the Central District of California
No. 2:17-cv-01076-DSF-AS
Hon. Dale S. Fischer, United States District Judge

---

## APPELLANT'S OPENING BRIEF

---

Calvin House
GUTIERREZ, PRECIADO & HOUSE, LLP
3020 E. Colorado Blvd.
Pasadena, CA 91107
Telephone: 626-449-2300 | Fax: 626-449-2330
calvin.house@gphlawyers.com

Attorneys for Appellant Daniel East

# Table of Contents

Table of Contents ......................................................................... i

Table of Authorities ................................................................. iii

1. Introduction ........................................................................... 1

2. Jurisdictional Statement .................................................... 3

3. Issues Presented ................................................................. 4

4. Statement of the Case ....................................................... 5
   A. The Undisputed Material Facts ................................... 5
      i. Murder of Alex Castaneda ................................... 5
      ii. Interview of Officer East ................................... 6
      iii. Arrest of Mr. Tobias .......................................... 9
      iv. Officer East's written statement .................... 10
      v. Role of Officer East's identification ............. 11
      vi. Trial, conviction and reversal ...................... 13
   B. Proceedings in the District Court ........................... 13

5. Summary of the Argument ............................................ 16

6. Argument ........................................................................... 17
   A. This Court has jurisdiction to review the District
      Court's denial of Officer East's qualified immunity
      defense under the collateral order doctrine . ............ 17
   B. Standard of review ...................................................... 21
   C. Officer East's actions did not violate clearly
      established law regarding fabrication of evidence. ... 22
      i. There was no substantial difference between the
         identification Officer East made during his
         interview and his characterization of it in his
         written statement. .............................................. 23
      ii. Officer East's written statement was not the cause
          of Mr. Tobias's injury. ...................................... 25

7. Conclusion ......................................................................... 28

8. Statement of Related Cases ........................................... 29

9. Certificate of Compliance with Rule 32(a).....................................30

# Table of Authorities

**Cases**

*Black v. Montgomery County,*
   835 F.3d 358 (3d Cir. 2016) ................................................. 23, 24

*Caldwell v. City & County of San Francisco,*
   889 F.3d 1105 (9th Cir. 2018) ............................................. 22, 23

*Collins v. Jordan,*
   110 F.3d 1363 (9th Cir. 1996) ................................................. 17

*Costanich v. Department of Soc. & Health Servs.,*
   627 F.3d 1101 (9th Cir. 2009) ................................................. 24

*Devereaux v. Abbey,*
   263 F.3d 1070 (9th Cir. 2001) ................................................. 22

*Foster v. City of Indio,*
   908 F.3d 1204 (9th Cir. 2018) ............................................. 18, 21

*Gausvik v. Perez,*
   345 F.3d 813 (9th Cir. 2003) ................................................. 24

*George v. Morris,*
   736 F.3d 829 (9th Cir. 2013) ................................................. 17

*Jeffers v. Gomez,*
   267 F.3d 895 (9th Cir. 2001) ................................................. 17

*Karl v. City of Mountlake Terrace,*
   678 F.3d 1062 (9th Cir. 2012) ................................................. 17

*Keates v. Koile,*
   883 F.3d 1228 (9th Cir. 2018) ................................................. 23

*Nelson v. Pima Community College,*
   83 F.3d 1075 (9th Cir. 1996) ................................................. 27

*P.B. v. Koch,*
   96 F.3d 1298 (9th Cir. 1996) ................................................. 17

*Pauluk v. Savage,*
   836 F.3d 1117 (9th Cir. 2016) ................................................. 17

*Rodis v. City, County of San Francisco,*
   558 F.3d 964 (9th Cir. 2009) ................................................. 21

*Scott v. Harris,*
   550 U.S. 372 (2007) ................................................. 18

*Spencer v. Peters,*
   857 F.3d 789 (2017) ................................................. 23

*Whitlock v. Brueggemann,*
   682 F.3d 567 (7th Cir. 2012) ................................................. 26

*Wilkinson v. Torres,*
   610 F.3d 546 (9th Cir. 2010) ................................................. 18

**Statutes**

28 U.S.C. § 1291 ................................................. 3

28 U.S.C. § 1331 ................................................. 3

28 U.S.C. § 1343 ................................................. 3

Cal. Educ. Code § 38000 ................................................. 5

Cal. Pen. Code § 830.32 ................................................. 5

**Court Rules**

Fed. R. App. P. 32 ................................................. 30

Fed. R. App. P. 4 ................................................. 3

# 1.  Introduction

Two LAPD detectives asked LA School Police Officer Daniel East to watch a surveillance video and tell them if he could identify a murder suspect on the video. After viewing the video several times, Officer East said the guy he was thinking of while watching was Plaintiff Art Tobias, then a middle school student. He also commented that he had a "hard time IDing that person," that "the full head of hair is throwing me off," and that the guy he was thinking of was "a lot smaller in stature." Another school employee told the detectives that he had seen the individual in the video outside the school. The detectives located Mr. Tobias outside the school, arrested him, and took him to an LAPD station, where he confessed during interrogation.

Sometime after Mr. Tobias confessed, Officer East submitted a written report about his identification to an LAPD detective. He wrote that he had said he was "fairly sure" Mr. Tobias was the person in the video, and that the video "made the person look slightly taller and thicker." He also wrote that the person "had a distinct walk and stature which is similar to that of Art Tobias." Mr. Tobias

claims that was a material falsification of Officer East's statement during his interview, and that it caused his wrongful prosecution.

After a trial, the Los Angeles Juvenile Court adjudicated Mr. Tobias to have committed the murder depicted on the video. Officer East testified at the trial about an encounter he had with Mr. Tobias before the murder, but did not testify about his identification of Mr. Tobias as the person in the video. The California Court of Appeal overturned the adjudication, because the confession at the LAPD station was obtained illegally.

After this Court remanded the case in response to Officer East's appeal in Case No. 18,56245, the District Court summarily adjudicated all the claims against him except the one for falsification of evidence. Although the court reasoned that Officer East's written statement "could have carried more weight with a judge or a prosecutor than an identification by LAPD officers," it did not identify any evidence that a judge or prosecutor had relied on the written statement.

This Court should direct entry of judgment in favor of Officer East, because he did not violate any clearly established law.

## 2.    Jurisdictional Statement

The District Court had subject matter jurisdiction over this action because Mr. Tobias's claims arise under the Constitution and laws of the United States,[1] and allege deprivation of his civil rights.[2]

This Court has appellate jurisdiction because this is an appeal from a collateral order denying a claim of qualified immunity.[3] Pursuant to the Court's order of December 4, 2020, the brief addresses this basis for the Court's jurisdiction below at p. 17.

The District Court entered its order denying Officer East's claim of qualified immunity on July 20, 2020. [1 ER-5] Officer East filed his notice of appeal on August 18, 2020. [3 ER 340] His appeal is timely under Federal Rule of Appellate Procedure 4(a).

---

[1] 28 U.S.C. § 1331.

[2] 28 U.S.C. § 1343.

[3] 28 U.S.C. § 1291.

### 3. Issues Presented

Whether this Court has jurisdiction under the collateral order doctrine to review the District Court's denial of Officer East's immunity claim? As explained below at page 17, it does.

Whether Officer East's written statement constituted unlawful fabrication of evidence under clearly established law. As explained below at page 22, it did not.

# 4.  Statement of the Case

## A.  The Undisputed Material Facts

Daniel East is a member of the Los Angeles School Police Department, a law enforcement agency operated by the Los Angeles Unified School District. [3 ER 263:8-12; Cal. Pen. Code § 830.32; Cal. Educ. Code § 38000] When the events that gave rise to this action occurred, he was assigned to Berendo Middle School. [3 ER 263]

## i.  *Murder of Alex Castaneda*

Shortly after midnight on August 18, 2012, Alex Castaneda was shot and killed in Los Angeles. A surveillance camera captured the shooting. [3 ER 302-03]

Earlier that night, Mr. Tobias's mother, Helen Contreras, had gone to the police station because she did not know where her son was, and wanted to file a missing person report. She showed a photograph of Mr. Tobias to LAPD Officer Marshall Cooley, one of the division's gang officers. [2 ER 161-62] Officer Cooley reported to the scene of the murder, where he viewed the surveillance video. He recognized the shooter as Mr. Tobias. [2 ER 163]

Officer Cooley then called Officer Dora Born, another gang enforcement officer. He asked her to look at the surveillance video.

Based on her earlier review of descriptors and a photograph from LAPD resources, she identified the shooter on the surveillance video as Mr. Tobias. [2 ER 42-47, 163]

At an investigative conference on August 20, 2012, the detectives working on the Castaneda murder determined that they would pursue Mr. Tobias as a suspect. After the conference, Detectives Michael Arteaga and John Motto went to Berendo Middle School to attempt to obtain additional identifications of Mr. Tobias. [2 ER 170] Before he went to the school, Detective Arteaga reviewed the surveillance video. [2 ER 70]

## ii.    *Interview of Officer East*

Upon their arrival at Berendo Middle School, the detectives went to Principal Rosa Trujillo, and told her that they were looking for someone to help make a possible identification of a suspect on the surveillance video. She suggested that they speak to Officer East and Assistant Dean Roger Negroe, because they had more interactions with students who tended to have disciplinary issues. [2 ER 132-33] Detective Motto explained the purpose of visiting the school:

> We want to show you a video. There's somebody on the video, see if somebody recognizes him. Okay? If you do,

6

great. If you don't, no problem. I'm not going to tell you
the name. I think I know who it is. But I want to see if
somebody can cold turkey identify him.

[2 ER 99] The detectives interviewed Officer East separately from

Mr. Negroe, so that they would not influence each other. [2 ER 101]

Officer East did not have any idea that the detectives were

coming to the school that day. He did not know anything about the

Castaneda murder. [2 ER 75-76] At the beginning of the interview,

the detectives played the surveillance video and pointed out the

suspect for whom they were seeking identification. Officer East said,

"That one looks like a large student to be a middle school student." [2

ER 102-04] The interview continued:

Officer East: I have a hard time IDing that person.

Officer Motto: Okay. No problem.

Officer East: I mean, the full head of hair is throwing me
off a little bit.

Officer Motto: Okay.

Officer East: Unless he shaved it and he did have more
hair last week.

Officer Motto: Who are you thinking of?

Officer East: The guy that I was thinking of is a lot
smaller in stature, though.

Officer Motto: Okay.

Officer East: It's Art Tobias.

Officer Motto: That's who we think it is.

Officer East: (Laughter.) But, I mean, God, he's so much smaller in real life.

Officer Motto: You have the book? Can I see the picture that the mother gave?

Officer East: He just recently shaved his head. He came to work -- came to school this morning with a shaved head.

Officer Arteaga: He's here?

Officer East: Yeah. He came this morning.

[2 ER 105-06] Detective Motto showed Officer East a photo of Mr.

Tobias that his mother had provided. The interview continued:

Officer Motto: . . . Is that -- Is that how he looked before the bald head?

Officer East: Yeah. That's accurate. I could give you a school photo from last year if he took one. His schedule (inaudible).

Officer Motto: Uh.

Officer East: If you don't need it, I can (unintelligible.) That's fine.

Officer Motto: I'd like to see it, at least if you have an accurate one there, just so we can com- -- That could be what that is. I don't know. So normally, he has the hair. But today, he came in balded.

Officer East: See, I noticed because I was watching him like a hawk last year.

[2 ER 106-07]

Officer East described a previous encounter he had had with Mr. Tobias, and then discussed Mr. Tobias's appearance in the photo. "The photo – The photo makes him look a little bit more bigger and stockier. But from that photo right there."

> Officer Arteaga: . . . What did you say was throwing you off, the hair?
>
> Officer East: No, I thought maybe he looked, like, taller and bulkier in the camera, which could be distorting through the mega pixels.

[2 ER 109-10] A little bit later Detective Motto said: "Yeah. Well, and the whole thing is this is what we have. So if I don't get it from everybody, including his mother, then we may have a hard time proving what you just saw. So somebody's going to have to frickin pay." [2 ER 113]

At some point while the recorder was off, the detectives asked Officer East to prepare a statement about what he had seen on the video. [2 ER 36-37]

### iii. *Arrest of Mr. Tobias*

After Officer East left, the detectives showed the surveillance video to Mr. Negroe, who said, "And you said that he's a Berendo student? I can't picture anybody like that right now." [2 ER 116] As

Mr. Negroe was walking down the hallway after the completion of his interview, he saw a student standing outside the school who he believed matched the person he had seen in the surveillance video. He informed the detectives. [3 ER 258A-B] Detective Arteaga believed the student whom Mr. Negroe identified was the person he had observed on the surveillance video. He then arrested the student, who was Mr. Tobias. [2 ER 70-72]

### iv.    *Officer East's written statement*

Either the day of his meeting with the detectives or the day after, Officer East wrote a statement about his identification. [2 ER 83-84] No one helped him prepare the statement. The language in the statement was entirely his own. [3 ER 251-52] The statement described his work for the Los Angeles School Police, and his previous encounter with Mr. Tobias. It described his identification of Mr. Tobias as follows:

> On 08/20/12 at about 1435 hrs I, Officer East Ser#00959, assigned to the Campus of Berendo Middle School, was approached by Detective Arteaga and Detective Motto LAPD Rampart Division in regard a recent Murder investigation in the area.
>
> At which time Detective Motto had me view a video of a recent shooting in the area and possibly identify the Suspect in the video. I watched the video several times

and stated that I was fairly sure that the Suspect in the video is Art Tobias (Student/Berendo Middle School) and stated that the video made the person look slightly taller and thicker. The Person in the video had a distinct walk and stature which is similar to that of Art Tobias.

[4 ER 387] Sometime between August 20 and August 24, Officer East delivered his written statement to LAPD Detective Jeff Cortina. [2 ER 84, 147:7-15; 4 ER 382]

### v. *Role of Officer East's identification*

After August 20, 2012, Officer East did not speak with any of the LAPD defendants, other than Detective Cortina. [2 ER 144] His contacts with Detective Cortina were limited to communications about his own written statement and Mr. Negroe's. [3 ER 260:13-26, 265:15-23] He had nothing to do with the interrogation of Mr. Tobias. [3 ER 265:12-14]

Detective Cortina signed a probable cause determination on August 20, 2012, which mentioned Officer East's identification:

On 8-18-2012 at approximately 0040 hours, vict Alex Castaneda along with others was standing in front of 1415 Alvarado Terrace when two male/Hispanics approached and open fired on the group. Victim Castaneda died from his GSW injury. The location had digital video recorded CCTV cameras. The video depicting the shooting was downloaded and shown to (2) LAPD Officers and (1) LAUSD Police Officer. Officers identified one of the shooters as being Art Tobias. Tobias mother,

had filed a "missing person" report the night of the shooting. Detectives conducted a follow-up to Berendo Middle School based on the missing person report and possible identification. in the shooting. Tobias was transported to Rampart Station where he confessed to the shooting. The interrogation was recorded.

[4 ER 385] The probable cause determination was part of the information provided to a judicial officer to determine whether there was probable cause to justify continued detention of Mr. Tobias as a juvenile. [2 ER 72A-C]

On August 22, 2012, the case was presented to a deputy district attorney, who decided to file charges against Mr. Tobias. [4 ER 383] The information provided to the deputy district attorney included the probable cause determination that referenced Officer East's identification during his interview at the school, and the LAPD "Murder Book," which included a copy of Officer East's written statement. [2 ER 72A-C] The Murder Book was submitted as a physical exhibit under seal as Exhibit 64 to Mr. Tobias's opposition to the summary judgment motion. Officer East is filing herewith a motion for leave to transmit a copy of the Murder Book under seal to the Court under Circuit Rule 27-14, so that it will be available should the Court wish to review it.

### vi.  *Trial, conviction and reversal*

Mr. Tobias was convicted on May 10, 2013. [2 ER 154:1-2; 4 ER 383] Officer East testified at the trial, but not about his identification of Mr. Tobias. [2 ER 151:7-15] The California Court of Appeal reversed Mr. Tobias's conviction in 2015, because the interrogation that resulted in his confession violated his constitutional rights. [3 ER 325-26]

### B.  Proceedings in the District Court

Mr. Tobias commenced this action by filing his initial complaint on February 9, 2017. [3 ER 351] The operative Second Amended Complaint purported to state seven federal civil rights claims against all the defendants, including Officer East: Count I, for violation of the right to counsel and the right against self-incrimination [3 ER 330]; Count II, for an unconstitutional interrogation in violation of the right to due process [3 ER 331]; Count III, for fabrication of evidence in violation of the rights to due process and to a fair trial [3 ER 332]; Count IV, for malicious prosecution under federal law [3 ER 334]; Count V, for failure to intervene to prevent the violation of constitutional rights [3 ER 335]; Count VI, for conspiracy to deprive Mr. Tobias of his constitutional rights [3 ER 336]; and Count VII, for

*Monell* policy claims [3 ER 337]. Officer East answered on February 21, 2018. [3 ER 268]

The District Court denied Officer East's summary judgment motion in its entirety on September 17, 2018. [1 ER 9-32] Officer East appealed to this Court under Case No. 18-56245. The Court remanded the matter to the District Court to review the claims against Officer East on a claim-by-claim basis to determine whether qualified immunity applied. The District Court concluded that summary judgment was appropriate as to all the claims against Officer East except the one for falsification of evidence. [1 ER-2]

On remand, the District Court identified Officer East's written statement that he was "fairly sure" the person in the video was Mr. Tobias as the falsification. It characterized that statement as "notably more certain tha[n] East's identification during the interview with the detectives where East stated that he was having 'a hard time IDing that person' and noted several significant apparent differences between Plaintiff and the person in the video." [1 ER 5]

The District Court also concluded that Officer East's written statement was the actionable cause of Mr. Tobias's injury:

> While the detectives' interrogation and other actions, if improper, almost certainly caused more injury to Plaintiff, East's allegedly false statements could have contributed to Plaintiff's harm. East's testimony could have been important to the chain of events in several ways. For example, unlike the LAPD witnesses, East was a witness outside of the investigating agency who was familiar with Plaintiff prior to the investigation. Because of this, East's identification could have carried more weight with a judge or a prosecutor than an identification by LAPD officers.

[1 ER 6] It did not point to any evidence that any judge or prosecutor relied on Officer East's written statement that he was fairly sure that Mr. Tobias was the person in the video.

**5.    Summary of the Argument**

A. This Court has jurisdiction to decide Officer East's appeal from the denial of his qualified immunity defense. Officer East accepts Mr. Tobias's version of the material facts, but argues those facts do not show that he violated clearly established law regarding falsification of evidence. That brings this case within the Court's jurisdiction.

B. Officer East did not violate Mr. Tobias's right not to be tried based on fabricated evidence, because:

(i) The difference between saying that he was "fairly sure" Mr. Tobias was the person on the video and saying that he had a "hard time IDing that person" was not sufficient to support an inference of deliberate fabrication.

(ii) His written statement was not the cause of Mr. Tobias's injuries.

## 6.  Argument

### A.  This Court has jurisdiction to review the District Court's denial of Officer East's qualified immunity defense under the collateral order doctrine .

On appeal from an order denying qualified immunity, this Court has jurisdiction to decide legal issues, but not to entertain arguments about the sufficiency of the evidence. However, as the Court emphasized in its ruling in the prior appeal in this case, "the presence of disputed facts does not preclude a finding of qualified immunity."[4] Where disputed facts exist, the Court can determine whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct.[5]

Assuming the non-moving party's version of the facts is correct does not require the Court to accept every contention that Mr. Tobias

---

[4] See *George v. Morris*, 736 F.3d 829, 835 (9th Cir. 2013); *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016); *Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1068 (9th Cir. 2012); *Collins v. Jordan*, 110 F.3d 1363, 1370 (9th Cir. 1996); *P.B. v. Koch*, 96 F.3d 1298, 1301 (9th Cir. 1996).

[5] *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001). See also *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017).

may make about what the evidence shows. It "must 'view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion.'" [Citations omitted] However, when the facts, as alleged by the non-moving party, are unsupported by the record such that no reasonable jury could believe them, [the Court] need not rely on those facts for purposes of ruling on the summary judgment motion."[6]

This Court's decision in *Foster v. City of Indio*[7] illustrates the distinction between a reviewable denial of qualified immunity and a non-reviewable denial. There, a police officer appealed from the denial of qualified immunity for claims (1) that he shot the decedent without justification, (2) that he made an investigative stop without reasonable suspicion, and (3) that he used excessive force in approaching the decedent with an unholstered gun. The Court had

---

[6] *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). See also *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment").

[7] 908 F.3d 1204 (9th Cir. 2018).

jurisdiction to determine whether qualified immunity barred claims (2) and (3), but lacked jurisdiction as to claim (1).

With respect to claim (1), the declarations and deposition testimony revealed a dispute about the events that led to the shooting. The police officer testified that he shot the decedent as the decedent turned toward him with a gun in his hand. Other witnesses stated that they did not see a gun and did not see the decedent turn toward the police officer. The police officer argued that the contradicting accounts should not have been considered because they did not effectively dispute his account. That argument could not be entertained on appeal, because it rested on the argument that the plaintiffs would not be able to prove that certain facts were true.

By contrast, the appeal from the district court's decision as to claims (2) and (3) concerned legal issues arising out of undisputed facts. There was no conflict in the evidence about the circumstances that led to the stop, and to the approach with an unholstered gun. This Court determined that it could entertain the appeal from the decision as to those claims, because it raised "a purely legal issue:

whether, based on undisputed facts, [the police officer] violated clearly established law."[8]

Officer East's appeal falls squarely within the scope of appellate jurisdiction over appeals from the denial of qualified immunity. He is not asking the Court to decide whether Mr. Tobias can prove certain facts. He accepts the facts that the District Court determined could be proved by the evidence, and asks this Court to determine as a matter of law whether those facts establish a claim for falsification of evidence.

As to Officer East's first argument in favor of summary judgment, this Court may examine the transcript of his interview and the written statement that contains the supposedly fabricated identification, and then determine as a matter of law whether any difference there may be between the two is trivial. See Section 6.C.i below at page 23.

As to his second argument, the District Court ruled that causation could be established by speculating that a prosecutor or a

---

[8] *Id.* at 1213.

judge might give credence to Officer East's written statement. However, the District Court did not identify any evidence that the statement played a role in the arrest, prosecution or conviction of Mr. Tobias. Therefore, this Court may rule as a matter of law that the District Court did not identify a disputed issue of material fact. See Section 6.C.ii below at page 25.

## B.    Standard of review

The District Court's decision to deny Officer East's summary judgment motion based on qualified immunity is reviewed de novo, with the Court of Appeals resolving any factual disputes in favor of the plaintiff, and then deciding the legal question as to whether the official's alleged conduct violated clearly established law.[9] In deciding that question, a "bare allegation alone, without any evidence in the record, is insufficient" to raise a genuine issue.[10]

---

[9] *Rodis v. City, County of San Francisco*, 558 F.3d 964, 968 (9th Cir. 2009).

[10] *Foster, supra*, 908 F.3d at 1217-18.

**C. Officer East's actions did not violate clearly established law regarding fabrication of evidence.**

 "[T]here is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government."[11] The plaintiff may prove the claim with "direct evidence of deliberate fabrication," or with "circumstantial evidence related to a defendant's motive."[12] As explained in *Devereaux*, a plaintiff relying on circumstantial evidence must have evidence either that "(1) [d]efendants continued their investigation . . . despite the fact that they knew or should have known that [the plaintiff] was innocent," or "(2) [d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information."[13]

---

[11] *Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1112 (9th Cir. 2018), quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

[12] *Id.* at 1112.

[13] 263 F.3d at 1076.

Because he did not investigate Mr. Tobias, the claim against Officer East must be based on direct evidence of deliberate fabrication. That requires proof that he made a statement "he knew to be false or would have known was false had he not recklessly disregarded the truth."[14] In addition, there must be evidence that the alleged fabrication was "the cause in fact and proximate cause of his injury."[15] To show causation there must be a "reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged."[16]

i.    *There was no substantial difference between the identification Officer East made during his interview and his characterization of it in his written statement.*

"[N]ot all inaccuracies in an investigative report give rise to a constitutional claim."[17] It is not enough that the statement "may

---

[14] *Keates v. Koile*, 883 F.3d 1228, 1240 (9th Cir. 2018).

[15] *Caldwell*, *supra*, 889 F.3d at 1115.

[16] *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016), cited with approval in *Spencer v. Peters*, 857 F.3d 789, 798 (2017).

[17] *Spencer*, *supra*, 857 F. at 798-99.

have been careless or inaccurate."[18] Errors based on "questions of tone or characterization" are not enough.[19] "There must be 'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith. . . . [It is expected] 'that it will be an unusual case in which a police officer cannot obtain a summary judgment in a civil action charging him with having fabricated evidence used in an earlier criminal case.'"[20]

According to the District Court, the inaccuracy was that Officer East told the LAPD detectives that he had a hard time identifying anyone and that Mr. Tobias was so much smaller in real life, but later wrote that he was "fairly sure" the shooter shown on the surveillance video was Mr. Tobias. [1 ER 5] The description of his identification that Officer East provided in the written statement does not provide a basis for a deliberate fabrication of evidence claim.

---

[18] *Gausvik v. Perez*, 345 F.3d 813, 817 (9th Cir. 2003).

[19] *Costanich v. Department of Soc. & Health Servs.*, 627 F.3d 1101, 1113 (9th Cir. 2009).

[20] *Black*, *supra*, 835 F.3d at 372.

The difference between the two statements is merely a difference in tone or characterization of Officer East's state of mind with respect to the identification. The transcript of the interview shows that he believed the shooter shown on the surveillance tape was Mr. Tobias. Although there may have been some discrepancies (such as that Mr. Tobias had recently cut his hair and that the individual on the video looked bigger), Officer East was "thinking of" Mr. Tobias before the detectives said that he was their suspect. [2 ER 105-06] The fact that he may have later written that he was fairly sure it was Mr. Tobias is not a meaningful difference, particularly because he also wrote that the video "made the person look slightly taller and thicker." [4 ER 387] It was at most a careless or inaccurate statement about the interview that cannot support a deliberate fabrication claim.

## ii. *Officer East's written statement was not the cause of Mr. Tobias's injury.*

As the Seventh Circuit has explained, if an officer "fabricates evidence and puts that fabricated evidence in a drawer, making no

further use of it, then the officer has not violated due process."[21] If Officer East had not submitted a written statement, the result would for Mr. Tobias would have been the same. Therefore, he did not violate Mr. Tobias's due process rights.

The LAPD detectives arrested Mr. Tobias at the school before they had Officer East's written statement, based on Mr. Negroe's statement that he had seen Mr. Tobias outside and Detective Arteaga's identification of him as the person on the video. The probable cause declaration that Detective Cortina wrote in connection with the detention at juvenile hall referred to the visit by detectives to the school but did not even state that Officer East had made an identification. [4 ER 385] The LAPD's follow-up investigation report mentioned Officer East's identification during the interview, but did not report what he wrote in his later statement. It just noted that his written statement had been received. [4 ER 379, 382] No evidence about Officer East's identification was presented at the trial. [1 ER 4]

---

[21] *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012).

Although the District Court speculated that Officer East's written statement *could have* carried more weight with a prosecutor or a judge than an identification by an LAPD officer, the court did not identify any evidence to support its speculation. The court did not cite any evidence that a prosecutor or a judge even *considered* Officer East's written statement in deciding whether to charge, hold or convict Mr. Tobias. Because "mere allegation and speculation do not create a factual dispute,"[22] this Court may disregard the District Court's conjecture about what might have happened.

Because there is no question that Mr. Tobias would have been arrested, charged and convicted even in the absence of Officer East's written statement,

---

[22] *Nelson v. Pima Community College*, 83 F.3d 1075, 1081 (9th Cir. 1996).

## 7.    Conclusion

By stating that he was "thinking of" Mr. Tobias while watching the surveillance video and later writing that he was "fairly sure" that the shooter depicted on the video was Mr. Tobias, Officer East did not become liable for deliberate fabrication. The difference between the two statements was not substantial enough to be deliberate. Even if the evidence supported an inference of deliberate fabrication, the written statement could not have caused Mr. Tobias's injury. There is no question that he would have been charged, prosecuted and convicted in the absence of Officer East's written statement.

This Court should reverse the District Court's denial of Officer East's qualified immunity claim, and direct it to enter judgment in Officer East's favor.

Dated: January 8, 2021

Respectfully submitted,

GUTIERREZ, PRECIADO & HOUSE, LLP

/s/ Calvin House

## 8. Statement of Related Cases

The appeal of four of the other defendants in this action—

Michael Arteaga, Jeff Cortina, J. Motto and Julian Pere—is pending

before this Court under Case No. 18-56360.

Officer East's earlier appeal was under Case No. 18-56245.

GUTIERREZ, PRECIADO & HOUSE, LLP

s/ Calvin House
Attorneys for Defendants-Appellees

## 9.     Certificate of Compliance with Rule 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because

☒ this brief contains 5,808 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains __ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App P. 32(a)(6) because:

☒ This brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Century Schoolbook font, *or*

☐ This brief has been prepared in a monospaced typeface using __ with __.

s/ Calvin House

Attorney for Appellant

Dated: January 8, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 8, 2021.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Calvin House