No. 20-55845

IN THE
**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

ART TOBIAS,

*Plaintiff-Appellee,*

v.

DANIEL EAST, L.A. School
Police Officer, No. 959

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central California
No. 2:17-cv-001076-DSF-AS

**PLAINTIFF-APPELLEE'S BRIEF ANSWERING AND IN
RESPONSE TO DEFENDANT EAST'S OPENING BRIEF AND
ARGUMENT**

Anand Swaminathan
David B. Owens
Megan Pierce
LOEVY & LOEVY
311 N. Aberdeen St, 3rd Fl.
Chicago, Illinois 60607
(312) 243-5900

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iii

JURISDICTIONAL STATEMENT .......................................................... 1

STATEMENT OF ISSUES.................................................................... 1

STATEMENT OF THE CASE ............................................................... 2

I.    The Alvarado Terrace Shooting ................................................. 2

I.    Law Enforcement Fabricate Evidence Purporting to Implicate
      Tobias in the Castaneda Shooting.................................................. 3

      A.    The LAPD Officers Decide to Fabricate Evidence................. 5

      B.    East Agrees to Fabricate Evidence As Well........................... 6

      C.    The Defendants Fabricate Additional "Evidence" and
            Commit other Constitutional Violations To Wrongfully
            Convict Tobias ...................................................................... 10

II.   The District Court Denies East's Motion for Summary
      Judgment ................................................................................... 13

SUMMARY OF ARGUMENT ............................................................. 19

ARGUMENT ....................................................................................... 22

I.    Standard of Review .................................................................... 22

II.   This Court Lacks Jurisdiction Over This Sufficiency-Of-The-
      Evidence Appeal ......................................................................... 22

      A.    Federal Courts have Limited Interlocutory Jurisdiction..... 23

**TABLE OF CONTENTS – cont.**

B.    The District Court's Decision That There Is Sufficient Evidence To Support A Conclusion East Fabricated Evidence That Caused Tobias Harm Is Unreviewable on Interlocutory Appeal ............................................................................ 25

C.    Despite His Claims Otherwise, East Challenges the District Court's Determination about the Sufficiency of the Evidence ................................................................................. 29

III.   Even Assuming Appellate Jurisdiction, the District Court Correctly Concluded There Was Sufficient Evidence for a Reasonable Jury to Find that East Violated Tobias's Constitutional Rights by Fabricating Evidence ............................. 34

A.    Legal Standard ....................................................................... 35

B.    The District Court Correctly Concluded There Is Sufficient Evidence for a Reasonable Jury To Find, that East Fabricated Evidence against Tobias ..................................... 36

C.    The District Court Correctly Concluded that There Is Sufficient Evidence for a Reasonable Jury To Find East's Actions  Harmed Tobias........................................................ 43

CONCLUSION ........................................................................... 52

STATEMENT OF RELATED CASES .................................................... 53

CERTIFICATE OF COMPLIANCE ...................................................... 54

CERTIFICATE OF SERVICE............................................................. 55

# TABLE OF AUTHORITIES

*Adams v. Speers*, 473 F.3d 989 (9th Cir. 2007) ........................................ 33

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) .................................. 35

*Advanced Bldg. & Fabrication, Inc. v. California Highway Patrol*,
    918 F.3d 654 (9th Cir. 2019) ............................................................ 24

*Alston v. Read*, 663 F.3d 1094 (9th Cir. 2011) ........................................ 24

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ............................. 35

*Arnold v. Int'l Bus. Machines Corp.,*
    637 F.2d 1350 (9th Cir. 1981) ................................................... 17, 44

*Baker v. Roman Catholic Archdiocese of San Diego,*
    725 F. App'x 531 (9th Cir. 2018) ...................................................... 36

*Barlow v. Ground*, 943 F.2d 1132 (9th Cir. 1991) ................................... 44

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) ......... 17, 44

*Butler v. Elle*, 281 F.3d 1014 (9th Cir. 2002) .......................................... 41

*Caldwell v. City and County of San Francisco*, 889 F.3d 1105
    (9th Cir. 2018) ........................................................................ passim

*Coghlan v. Am. Seafoods Co. LLC.,* 413 F.3d 1090 (9th Cir. 2005) ....... 36

*Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101
    (9th Cir. 2010) ........................................................................ passim

*Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001) .............. 17, 23, 36, 44

*Farr v.NC Machinery Co.*, 186 F.3d 1165 (9th Cir. 1999) ...................... 46

*Foster v. City of Indio*, 908 F.3d 1204 (9th Cir. 2018) ................ 24, 27, 28

iii

*Garver v. Brandt*, 584 F. App'x 393 (9th Cir. 2014) .................................. 25

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) .................................. 24, 33

*Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) ........ 17, 44, 45

*Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014) ....................................... 49

*Harris v. Itzhaki*, 183 F.3d 1043 (9th Cir. 1999) .................................... 42

*In re Ozenne*, 841 F.3d 810 (9th Cir. 2016) ............................................. 22

*Jensen v. Stangel*, 762 F.2d 815 (9th Cir. 1985) ..................................... 41

*Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159
    (9th Cir. 2013) ................................................................................. 25

*Johnson v. Jones*, 515 U.S. 305 (1995) ........................................... passim

*Knox v. Southwest Airlines*, 124 F.3d 1103 (9th Cir. 1997) .................... 22

*Lies v. Farrell Lines, Inc.*, 641 F.2d 765 (9th Cir. 1981) ........................ 51

*Maropulos v. County of Los Angeles*,
    560 F.3d 974 (9th Cir. 2009) .................................................... 25, 27

*Mendez v. Cty. of Los Angeles*, 897 F.3d 1067 (9th Cir. 2018) .......... 49, 51

*Monroe v. Pape*, 365 U.S. 167 (1961) ...................................................... 43

*Ortiz v. Jordan*, 562 U.S. 180 (2011) ...................................................... 23

*Pac. Shores Properties, LLC v. City of Newport Beach*, 730 F.3d 1142
    (9th Cir. 2013) ............................................................................ 26, 51

*Paroline v. United States*, 572 U.S. 434 (2014) ...................................... 49

*Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865 (9th Cir. 1992)......................................................................24

*Plumhoff v. Rickard*, 572 U.S. 765 (2014) ..............................................24

*Prosser v. Crystal Viking F/V,* 940 F.2d 1535 (9th Cir. 1991) ..............51

*Provenz v. Miller*, 102 F.3d 1478 (9th Cir. 1996) ...................................41

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ..........42

*Rodriguez v. County of Los Angeles*, 891 F.3d 776 (2018) ......................25

*Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216 (9th Cir. 2018) ..............35

*Spencer v. Peters*, 857 F.3d 789 (9th Cir. 2017) ...................17, 36, 43, 49

*Staub v. Proctor Hosp.,* 562 U.S. 411 (2011) ....................................49, 51

*Stinson v. Gauger*, 868 F.3d 516 (7th Cir. 2015)....................................42

*Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009) ................43, 45, 46

*Tolan v. Cotton*, 134 U.S. 650 (2014) ..........................................2, 32, 35

*Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) ..........49, 50

*Vos v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018)................33

*W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970 (9th Cir. 2012)........33

*White v. Roper*, 901 F.2d 1501 (9th Cir. 1990) ................................27, 51

*Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012)................43, 51

*Will v. United States*, 389 U.S. 90 (1967) ..............................................23

# STATUTES AND OTHER AUTHORITIES

28 U.S.C. § 1291 ..................................................................... 23

Ninth Cir. Jury Instr. Comm., Manual of Model Civil Jury
     Instructions, § 9.33 ................................................. 14, 44

Fed. R. Civ. P. 56(a) ............................................................. 35

Restatement of 3d Torts § 27 .............................................. 49

Restatement of 3d Torts § 29 .............................................. 51

# JURISDICTIONAL STATEMENT

This case was filed in the District Court for the Central District of California, asserting federal constitutional claims under 42 U.S.C. § 1983. The District Court had jurisdiction under 28 U.S.C. § 1331.

This Court lacks jurisdiction over Defendant Los Angeles Unified School District Police Officer Daniel East's interlocutory appeal because it does not arise from a final order as required by 28 U.S.C. § 1291, as discussed further below. No timeliness issues preclude jurisdiction.

# STATEMENT OF ISSUES

1. Whether this Court has interlocutory jurisdiction to consider East's appeal of an order denying summary judgment on Plaintiff's Due Process claim for the fabrication of evidence based on a determination that disputed facts precluded summary judgment and that there was sufficient evidence from which a jury could conclude that East's misconduct caused Plaintiff harm? Answer: No.

2. Whether, assuming *arguendo* this Court has jurisdiction over this appeal, East can obtain summary judgment while refusing to

accept Tobias's facts and refusing to take all reasonable inferences in Tobias's favor?

Answer: No.

3. Whether, assuming *arguendo* this Court has jurisdiction over this appeal, the District Court correctly denied summary judgment to East with regard to Tobias's Due Process claim for the fabrication of evidence?

Answer: Yes.

## STATEMENT OF THE CASE

### I.     The Alvarado Terrace Shooting

On August 18, 2012, shortly after midnight on a Friday night turned Saturday morning, Alex Castaneda was shot and killed on the 1400 block of Alvarado Terrace in Los Angeles. Plaintiff's Statement of Facts (SOF) ¶61, at Plaintiff's Excerpt of Records (SER) 26.[1] Castaneda was with a group of friends, two of whom were also shot but whose

---

[1] Citations to the Excerpts of Record are denoted ER and citations to Plaintiff's additional excerpts of record are denoted SER. Paragraph citations are to Tobias's statement of facts (SOF), which are located at 1-SER-27–80, supported by evidence also in the record below and now on appeal and that further evidentiary citation is incorporated here, rather than repeated. East must accept these facts, and this Court's review is constrained by them as well. *See Tolan v. Cotton*, 134 U.S. 650, 657 (2014); *Johnson v. Jones*, 515 U.S. 305, 313-14 (1995).

injuries were non-fatal. *Id.* ¶61. Surveillance footage captured the primary shooter and depicts a heavyset adult male firing at Castaneda and the others. *Id.* ¶¶67-68. Consistent with the video, witnesses described the shooter in the video as an adult, about 6 feet tall, and weighing nearly 200 pounds. *Id.* ¶63. Because the perpetrators yelled "MS" before firing, they were believed to be members of the "Mara Salvatrucha" (MS) gang. *Id.* ¶64.

Tobias had nothing to do with the Castaneda homicide, and was completely innocent of this offense. *Id.* ¶60. At the time of the shooting, Tobias was a skinny 13-year-old child who stood under 5 feet tall and weighed just over 100 pounds; he looked nothing like the substantially larger adult shooter depicted on surveillance video and observed by multiple witnesses. *Id.* ¶¶61-68. Tobias was also at home with his mother when the shooting occurred and could not have committed the crime. *Id.* ¶70. Nor was Tobias a member of MS gang. *Id.* ¶66.

## I. Law Enforcement Fabricate Evidence Purporting to Implicate Tobias in the Castaneda Shooting

Four LAPD homicide detectives from the Rampart Division—Michael Arteaga, Jeff Cortina, John Motto, and Julian Pere (the Detectives)—were ultimately assigned to investigate the homicide. *Id.*

3

¶71. Motto and Pere reported to the scene the evening of the shooting where they collected evidence, spoke with other officers, and obtained the surveillance video footage. *Id.* None of the eyewitnesses, including surviving victims, provided any information that implicated Tobias, and no evidence at the scene connected him to the crime. *Id.*

Hours earlier, between 9 and 10pm Friday evening, Tobias's mother, Helen Contreras, went to the Rampart Division station to file a missing person's report because she could not find Tobias. *Id.* ¶74. After speaking with one officer, Contreras was referred to a "gang specialist," Officer Cooley, because she lived in MS territory. *Id.* ¶75.

Contreras briefly showed Cooley a photo of her son on her cell phone, but Cooley had never seen Tobias before and did not recognize him. *Id.* ¶¶75-76. After speaking with Contreras, Cooley checked LAPD computers to see what information the Department had regarding Tobias, which confirmed that he was a 13-year-old boy who weighed just over 100 pounds and stood under 5-feet tall. *Id.* ¶¶83-85.

Later, because Cooley was a gang specialist and the MS gang was possibly involved, he reported to the scene of the Castaneda shooting. *Id.* ¶78. There, Cooley learned about the surveillance video of the

shooting, which he watched. *Id.* ¶¶81-82. Another gang officer, Defendant Dora Born, reported to the scene and viewed the video. *Id.* ¶79. Like Cooley, Born had never met Tobias. *Id.* Both Cooley and Born were aware the evidence in their own LAPD resources and the surveillance footage pointed away from Tobias. *Id.* ¶83. Nonetheless, after the officers learned about the missing-persons report they quickly homed in on Tobias as their only suspect, despite knowing that he looked nothing like the shooter on the surveillance video and described by witnesses, *id.* ¶¶69, 101, 128, and despite the fact that Contreras had called the Rampart Division to inform the officers Tobias had returned home. *See id.* ¶¶70; 3-SER-291–92.

## A. The LAPD Officers Decide to Fabricate Evidence

In a departure from accepted police practices, the Detectives refused to conduct photographic or in-person lineups with the surviving victims or witnesses. SOF ¶¶73, 180-81. The Detectives instead decided to implicate Tobias and to use his mother's missing person report as a pretext for doing so. *Id.* ¶¶69, 101-02, 128. For example, instead of asking actual witnesses to view photographic or in-person lineups, the Detectives manufactured "identifications" of Tobias by other police

officers viewing the surveillance video, none of whom were at the scene and some of whom had never even met Tobias: *i.e.*, Officers Cooley and Born. *Id.* ¶¶74-101. Cooley and Born fabricated reports, claiming they recognized Tobias from the video when they had not. *Id.* ¶¶113-20.

## B. East Agrees to Fabricate Evidence As Well

At the time of the shooting and investigation, East was working as an officer for the Los Angeles Unified School District (LAUSD) at Berenedo Middle School *Id.* ¶103. His responsibilities included conducting criminal investigations and coordinating with other law enforcement agencies and officers, like the Detectives. *Id.* ¶103. East's participation in the Castaneda homicide investigation began two days after the shooting when Detectives Arteaga and Motto went to Berendo Middle School, where Tobias was a student. *Id.* ¶101. Realizing the implausibility of the "identifications" by two gang specialists who had never met Tobias, the Detectives went to the school to drum-up fake "identifications" by other law enforcement that had met Tobias. *Id.* ¶102. East was willing to provide what they wanted: another fabricated

identification from the surveillance video. *See generally id.* ¶¶101-126, 184-85 (and extensive evidence cited therein).[2]

The meeting between Arteaga, Motto, and East was audio-recorded. *Id.* ¶121.[3] By the time the recording begins, East knew Arteaga and Motto were at the school to show him and others a video and ask them to identify the person therein. *Id.* ¶¶103-04. Motto and Arteaga told East about the shooting, that the victim had died, and that they believed the shooter to be a student at the school. *Id.* ¶¶102-104.

When East first watched the video, he immediately recognized that the shooter was too large to be a middle school student. *Id.* ¶105; *see also* 7-SER-1070. East watched the video a second time, and again affirmed that he could not make an identification from the surveillance video, SOF ¶106; 7-SER-1071, stating: "I have a hard time IDing that person." SOF, ¶; 7-SER-1071. Despite this, East told the Detectives that

---

[2] In these paragraphs, among other things, Tobias cites East's statement form, 8-SER-1325, East's Deposition, 1-SER-81–102, Plaintiff's Transcript of the audio recording of the interview, 7-SER-1061–1093, the audio itself (submitted manually), the arrest report for Tobias, 7-SER-1049, and the probable cause determination submitted to support Plaintiff's arrest, 8-SER-1327.

[3] Unlike East, Tobias has submitted this audio recording to the Court for its review. Tobias has also submitted a more accurate version of the transcript of this recording than the one used by East and that should control this appeal. *See* 7-SER-1061–93.

he was "thinking" of a person who he described as being too small to be the person in the video—Art Tobias. SOF ¶¶107-08; 7-SER-1071. Even though East had *not* identified Tobias or any other person as the shooter in the video, the Detectives told East that they believed that Tobias was the shooter, saying "that's who we think it is." SOF ¶109; 7-SER-1072. Given the absurdity, East laughed and again pointed out that Tobias was too small to be the shooter in the video. SOF ¶110.

Nevertheless, after watching the video again and providing the Detectives with additional school pictures of Tobias, East agreed to assist them in implicating Tobias in the crime and to say he had "identified" Tobias from the video, when he had not. SOF ¶¶110-11; 7-SER-1080. The three officers even discussed, together, how they would characterize East's purported "identification" in their reports. *Id.*

As part of these efforts, East took a number of additional steps to prosecute Tobias, including: trying to find older pictures of Tobias from prior school years (an effort aimed at finding one that would make it appear that Tobias could have been the person in the video, even though they knew it was not him); identifying other law enforcement officers who had met Tobias; writing a statement (that included

falsehoods, discussed below) on an LAPD investigative form; attempting to locate and provide Detectives with "Field Interview" cards of prior contacts with Tobias; and working to obtain a statement from another Berendo employee, Roger Negroe. *Id.* ¶¶104-08, 111-26.

The recording of the meeting indicates East knowingly agreed to falsely implicate Tobias in the shooting despite being unable to identify him (or anyone) from the video. *See generally* 7-SER-1061–93. Arteaga and Motto discussed with East what his statement would be. They even set out the next steps in the plan: they were going to try to get other people, including Negroe and Contreras (Tobias's mother), to identify Tobias as the shooter. SOF ¶126. The conversation was explicit: they were going to try to "rope" Tobias's mother into "all of this," and if she did not "identify" 13-year-old Tobias as the adult in the video, they would have a "hard time proving what [East] just saw," even though East had not made an identification. *Id.* ¶114. If and when these efforts faltered, as Motto put it, "somebody's going to have to frickin pay." *Id.*

Following the recorded meeting with East, Detectives Arteaga and Motto tried to obtain an "identification" of Tobias from Negroe. *Id.* ¶116. Negroe described the shooter as "chubby"; and like East, he was unable

to make an identification from the video. *Id.* ¶¶115-16. East and these

Detectives then met a second time—without audio recording—where

East knew that Negroe had not made an identification from the video

and where they agreed that East himself would write a statement

saying he identified Tobias as the shooter. *Id.* ¶¶116, 118; *see also* 1-

SER-85–86, 91–92.

### C. The Defendants Fabricate Additional "Evidence" and Commit other Constitutional Violations To Wrongfully Convict Tobias

Shortly after East agreed that he would write a statement

implicating Tobias in the shooting, the Detectives arrested Tobias for

the Castaneda murder and left the school. SOF ¶¶117, 127. For his

part, East apprehended the middle schooler with Tobias at the time and

drove him to the Rampart Division station. *Id.* ¶117.

Then, the plan discussed with East was implemented: Arteaga

attempted to "rope" the 13-year old's mother, Contreras, into the case

and pressure her into making a false identification of her son. *Id.* ¶136.

This effort was unsuccessful and she refused to falsely identify Tobias

as the shooter. *Id.* As a consequence, Tobias was made to "frickin pay."

Using a litany of coercive and unlawful tactics, the Detectives

interrogated Tobias until he provided a false and fabricated confession. *See generally id.* ¶¶134-82.

Meanwhile, East wrote the report he had previously discussed with the Detectives. East's report—written on an LAPD (rather than LAUSD) form—falsely stated that he had identified Tobias from the surveillance video, which he was able to complete at the LAPD station and which he submitted that day. *Id.* ¶118; 3-SER-313; 8-SER-1326. East's report contained multiple false statements, including that after watching the video multiple times East "*stated* that I was fairly sure that the Suspect in the video *is* Art Tobias"—nearly the opposite of what he said the first two times he watched the video. SOF ¶121 (emphasis added); 8-SER-1326. In fact, even after learning Tobias was the target, East never once "*stated*" that the person in the video "*is* Art Tobias." *Id.* ¶122 (emphasis added); 7-SER-1071–1072; Audio Recording. The statement was false.

Similarly, East indicated in his statement that he was able to identify Tobias because the individual in the video had a similar "stature" to Art Tobias. SOF ¶123. Again, this directly contradicts what East said during his meeting with the Detectives and what he knew to

be true. *Id.*; 7-SER-1071–1072. Officer East included these and other falsehoods—including that Tobias had a "distinct walk," something he never stated while viewing the surveillance video—in his report to help the Detectives wrongly frame Tobias for the murder. SOF ¶¶123-26; 7-SER-1061–1083.

As a result of East and the Detective's coordinated misconduct, Tobias was formally arrested and then charged with the Castaneda homicide. The probable cause determination/declaration submitted to the prosecutor to support the arrest and charges expressly includes East's false and fabricated "identification" of Tobias from the surveillance video as a basis for his prosecution. SOF ¶184; 8-SER-1328. The LAPD arrest report also invoked East's fabricated identification to support the arrest and charges against Tobias, SOF ¶¶125, 184; *see* 7-SER-1051–52 (referring to East explicitly); *id.* at 1048 (supplemental report contending "Tobias was identified as the shooter" and "caught on video committing the crime"). East's purported "identification" and fabrication—that he said the "suspect in the video 'Looks like Art Tobias'"—was also included in the Chronological Record of the "Murderbook," the official LAPD overview of the investigation. 8-

SER-1333. The inclusion of East's fabricated "identification" in East's statement, the probable cause declaration, the arrest report, and the chronological record confirm that his misconduct was undisputedly used to implicate, arrest, and prosecute Tobias for the Castaneda homicide. SOF ¶¶184-85.

The efforts to frame Tobias for the Castaneda shooting were successful, and Tobias was wrongfully convicted at trial of a murder he did not commit. *Id.* ¶¶60, 214. Though East did not testify about the purported "identification" at trial, he did meet with the prosecutor and discussed his statement purporting to identify Tobias in advance of his trial testimony. 3-SER-313–14. Tobias's conviction was overturned on direct review by the Court of Appeal. On remand, the district attorney dismissed the charges. 6-SER-933–957, SOF ¶214. This action followed.

## II.    The District Court Denies East's Motion for Summary Judgment

In the proceedings below, Tobias claimed that East was liable for violating Tobias's due process rights by fabricating evidence, violating Tobias's Fourth Amendment right to be free from seizure without probable cause, conspiring to violate Tobias's constitutional rights, and failing to intervene in the violation of Tobias's rights. 3-ER-298–339

13

East filed a motion for summary judgment in which he argued that the evidence was insufficient to show that he violated Tobias's constitutional rights and cause his injury. In making these arguments, East refused to take the facts and reasonable inferences in Tobias's favor. 2-SER-184–191. At *no point* did East contend that Tobias's due process rights and Fourth Amendment rights were not clearly established. 2-SER-163–165. His arguments focused exclusively on factual disputes and the sufficiency of the evidence.

The District Court denied summary judgment to East because it concluded that disputes of material fact require Tobias's claims to be submitted to the jury. 1-ER-25–26. As it concerns Tobias's Due Process claim for the fabrication of evidence, the District Court concluded it is "readily apparent that Plaintiff's version conflicts with Defendants' version of these events." *Id*. As it concerns East's argument that any § 1983 claim against him fails because his conduct was not the proximate cause of Tobias's injuries, the District Court recognized "this is simply another disputed issue of fact for the jury." 1-ER-25 n.4 (citing *Caldwell v. City and County of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018) (citing NINTH CIR. JURY. INSTR. COMM., MANUAL OF MODEL

CIVIL JURY INSTRUCTIONS § 9.33 (2017) ("The defendant [name] deliberately fabricated evidence that was used to [[criminally charge] [prosecute] [convict]] the plaintiff.")).

East brought an interlocutory appeal, challenging the District Court's determination that the evidence was sufficient for a reasonable jury to find East liable for violating Plaintiff's constitutional rights and causing his wrongful conviction and incarceration. 3-ER-340. This Court found that it wanted additional explanation from the District Court as to the reasons it denied summary judgment to East, and remanded the case to the District Court for a more detailed, claim-by-claim consideration of Tobias's claims against East. 1-ER-2.

On remand, East was effectively given a second bite at the apple on summary judgment, although this Court did not remand for that purpose. In the end, the District Court significantly narrowed its ruling, entering judgement in East's favor on Tobias's Fourth Amendment, failure to intervene, and conspiracy claims. 1-ER-2–8.[4] The District Court, however, denied summary judgment to East with regard to

_____

[4] Tobias disagrees with the District Court's conclusion as to those claims, but concedes a challenge to those conclusions is not properly raised on interlocutory appeal.

Tobias's Due Process claim for the fabrication of evidence. In doing so, the District Court made clear that there was no dispute about the law: "It is clearly established that a law enforcement officer cannot falsely identify a person as having committed a crime." 1-ER-5.

East concedes that is true. Instead, as before, East's argument was that there was insufficient evidence to find he fabricated evidence that caused harm to Tobias. *See* Trial Court Dkt. 267. East also pressed the contention that there was not sufficient evidence his acts caused Tobias harm. *Id.* As a result, the District Court ordered additional briefing specifically on the causation issue, and whether the evidence was sufficient to allow a reasonable jury to find East's actions caused Tobias harm. 1-SER-103. Tobias complied with this ruling and explained, in detail, how the evidence in this case—including the probable cause determination that expressly references East—is beyond sufficient to make the question of causation one for the jury. 1-SER-110. Tobias emphasized established precedent that the inclusion of East's statement in the evidentiary record of the underlying criminal proceedings establishes causation, and in any event is a fact-bound question of causation for the jury and not adjudication at summary

judgment. *Id.* at 2-3 (citing, among other authorities, *Caldwell*, 889 F.3d at 1115 (citing *Devereaux v. Abbey*, 263 F.3d 1070, 1074-75 (9th Cir. 2001), and NINTH CIR. JURY INSTR. § 9.33), *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007), *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017), *Arnold v. Int'l Bus. Machines Corp.,* 637 F.2d 1350, 1355 (9th Cir. 1981), *Gregory v. City of Louisville*, 444 F.3d 725, 741 (6th Cir. 2006)).

The District Court considered the sufficiency of the evidence, and the extensive briefing and evidence specifically about causation, and concluded that a reasonable jury could find East fabricated a false identification of Tobias, causing his injury. 1-ER-5–6.

The District Court specifically compared East's written statement with what was said during the recorded meeting and found that a jury could conclude the report was fabricated because it "was notably more certain tha[n] East's identification during the interview with the detectives where East stated that he was having a 'hard time IDing that person' and noted several significant apparent differences between Plaintiff and the person in the video." 1-ER-5. The District Court

acknowledged East's contrary interpretation of the evidence, but

nonetheless found:

> the evidence also supports an inference that East
> intentionally exaggerated his certainty in order to assist the
> LAPD detectives after East became aware that the
> detectives were committed to proving that Plaintiff had
> committed the murder. Given that the qualified immunity
> and summary judgment standards require the facts and
> possible inferences to be viewed in the light most favorable
> to Plaintiff, judgment cannot be entered in East's favor on
> this claim.

1-ER-5.

The District Court next rejected East's principal argument in this

interlocutory appeal: that there is insufficient evidence for a reasonable

jury to find East's fabrications proximately caused Tobias harm. While

recognizing—as in many cases—that other defendants may have caused

"more injury" to Tobias, the trial court found that a reasonable jury

could find "East's allegedly false statements . . . contributed to

Plaintiff's harm" as well. 1-ER-6. Specifically, the trial Court found the

evidence was sufficient for a jury to conclude East's actions were

"important to the chain of events in several ways." *Id*. As an example,

the District Court found the evidence supported that East's

identification carried weight in the probable cause determination

because he was familiar with Tobias and was not a member of the Los Angeles Police Department, while the LAPD officers, Cooley and Born, who provided purported identifications of Tobias had never met the young teenager. *Id.* In sum, the District Court found:

> Because there is *sufficient evidence* in the record to support a conclusion that East violated Plaintiff's rights by providing false testimony and that the testimony harmed Plaintiff, summary judgment cannot be granted on the false testimony claim.

*Id.* (emphasis added).

East now appeals the District Court's conclusion that the evidence is sufficient to allow a reasonable jury to find in favor of Tobias on his Due Process claim for the fabrication of evidence. Opening Br. (OB) 21.

## SUMMARY OF ARGUMENT

At age 13, Tobias was arrested, prosecuted, and convicted of a murder he did not commit. After years in prison, Tobias's conviction was overturned and he now seeks justice from the law enforcement officers who violated his constitutional rights and caused him serious and irreparable harm.

East has maintained through all stages of this litigation that he cannot be held liable because there is insufficient evidence for a

reasonable jury to determine (1) that he fabricated evidence and (2) that his actions caused Tobias harm. The District Court rejected these arguments, finding that there was sufficient evidence on both points.

East has now immediately appealed this decision, ignoring the firm rule that jurisdiction over an interlocutory appeal is strictly limited to purely legal questions. East's total disregard for the limited scope of interlocutory review is clear in the two substantive arguments he presents in this appeal, both of which are fact-bound sufficiency of the evidence arguments over which there is not interlocutory jurisdiction. While it may be true that some appeals fall within the collateral order doctrine and involve legal questions about qualified immunity, this is not one of them. Indeed, the question of whether there is not just sufficient evidence, but sufficient evidence *of causation* is a doubly inappropriate argument for interlocutory appeal—sufficiency of the evidence challenges are forbidden, and they are particularly unsuited to a quintessential jury question like causation.

But, that has not stopped East from making these sorts of arguments the centerpiece of this appeal. Compounding the error, East has made impermissible sufficiency arguments while simultaneously

refusing to construe the facts, and inferences therefrom, in the light most favorable to Tobias. Instead, he explicitly rejects Tobias's version of events, most egregiously by simply omitting that his fabrications were included in the probable cause determination setting in motion the charging and prosecution of a young teenager for a crime he did not commit. East's appeal is devoid of any legal questions, and instead defies the standards for interlocutory review and for summary judgment. As a consequence, the appeal should be dismissed for want of jurisdiction.

Even assuming jurisdiction, East cannot prevail because, as the District Court found, the factual record is sufficient for a reasonable jury to find that East fabricated evidence and caused Tobias harm. A prompt remand is required so Tobias can present his meritorious claims to the jury without further delay.

**ARGUMENT**

## I.  Standard of Review

This Court is required to make an independent determination of whether it has jurisdiction before considering the merits of a case. *In re Ozenne*, 841 F.3d 810, 814 (9th Cir. 2016). East has the burden to show that interlocutory jurisdiction exists. *Id.* A district court's denial of summary judgment is reviewed *de novo. Knox v. Southwest Airlines*, 124 F.3d 1103, 1105 (9th Cir. 1997).

## II.  This Court Lacks Jurisdiction Over This Sufficiency-Of-The-Evidence Appeal

The Court does not have jurisdiction over East's appeal because his argument is—and always has been—that the evidence in the record is insufficient to prove Tobias's claim that East fabricated evidence against him. East does not contest that Tobias's constitutional right to be free from prosecution based on fabricated evidence was clearly established in 2012. OB 27 (conceding that "[t]here is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government." (quoting *Caldwell*, 889 F.3d at 1112)). Nor can he: such an argument is untenable given the jurisprudence in this Circuit.

*See Devereaux v. Abbey*, 263 F.3d 1070, 1075-1076 (9th Cir. 2001) (concluding that it is "virtually self-evident" that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated"). Instead, East challenges the District Court's determination, based on consideration of the entire record, that "there is sufficient evidence in the record to support a conclusion that East violated Plaintiff's rights . . .  and harmed Plaintiff." 1-ER-6. This Court lacks jurisdiction to consider such an argument at this juncture.

## A. Federal Courts have Limited Interlocutory Jurisdiction

Federal appellate jurisdiction is strictly circumscribed, and restricted almost exclusively to final decisions of lower courts. 28 U.S.C. § 1291; *see also Will v. United States*, 389 U.S. 90, 96 (1967) ("All our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court."). "Ordinarily, orders denying summary judgment do not qualify as 'final decisions' subject to appeal." *Oritz v. Jordan*, 562 U.S. 180, 188 (2011). Courts have identified a narrow exception to this rule for appeals of a

denial of qualified immunity, but only where they raise a *purely legal* question for the appellate court. *See Plumhoff v. Rickard*, 572 U.S. 765, 771-72 (2014).

Under *Johnson v. Jones*, 515 U.S. 305 (1995), appellate courts do not have interlocutory jurisdiction to consider "'a fact-related dispute about the pretrial record' that is, 'whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial.'" *Advanced Bldg. & Fabrication, Inc. v. California Highway Patrol*, 918 F.3d 654, 657 (9th Cir. 2019) (quoting *Johnson*, 515 U.S. at 307); *accord. Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018); *Alston v. Read*, 663 F.3d 1094, 1098 (9th Cir. 2011); *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013).

This rule is intended to promote judicial efficiency and conserve appellate resources. *See Johnson*, 515 U.S. at 308-309, 314-315. And upholding it is critical to curtailing abusive delay tactics by defendants in civil rights lawsuits. *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 870 (9th Cir. 1992) (recognizing that interlocutory appeals of qualified immunity can be abused as a delay

tactic and that such appeals can impose considerable "burden[s] on civil rights plaintiffs, in terms of both delay and expense").

**B. The District Court's Decision That There Is Sufficient Evidence To Support A Conclusion East Fabricated Evidence That Caused Tobias Harm Is Unreviewable on Interlocutory Appeal**

The Court has already identified the jurisdictional problem with East's appeal, referring specifically to the opinions in *Maropulos v. County of Los Angeles*, 560 F.3d 974 (9th Cir. 2009) and *Rodriguez v. County of Los Angeles*, 891 F.3d 776 (2018), and asked the parties to brief the issue. Under these and other authorities, this Court examines the "basis for denial" of summary judgment below to determine whether it falls within the narrow exception permitting interlocutory review of collateral orders. *Maropulos,* 560 F.3d at 975; *see also Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1179 (9th Cir. 2013); *Garver v. Brandt*, 584 F. App'x 393, 394 (9th Cir. 2014).

The District Court's order explicitly denied East's motion for summary judgment upon finding the evidence sufficient to allow a reasonable jury to conclude that East fabricated evidence that was used against Tobias and that caused Tobias to be injured. 1-ER-6 ("Because there is sufficient evidence in the record to support a conclusion that

East violated Plaintiff's rights by providing false testimony and that the testimony harmed Plaintiff, summary judgment cannot be granted on the false testimony claim."); *see also id.* at 5 (concluding that the evidence in the record supports a finding that East intentionally fabricated a false report and that, taking the facts and inferences "in the light most favorable to Plaintiff, judgment cannot be entered in East's favor on this claim"); *id.* at 6 (weighing the evidence and concluding that a jury could find, based on the record, that East's false statements caused Tobias's harm).

Under *Johnson*, the sufficiency of the evidence—or "whether or not the evidence in the pretrial record was sufficient to show a genuine issue of fact for trial"—falls well outside this Court's limited interlocutory review. 515 U.S. at 307. The question of whether there is sufficient evidence not just of an underlying constitutional violation but also for a jury to find causation is an egregious departure from these standards, as causation is a quintessential jury question. *See Pac. Shores Properties, LLC v. City of Newport Beach,* 730 F.3d 1142, 1168 (9th Cir. 2013) (explaining that causation "is an intensely factual

question that should typically be resolved by a jury." (citing *White v. Roper*, 901 F.2d 1501, 1505-06 (9th Cir. 1990)).

This Court's decision in *Maropulos* is instructive. There, the Court dismissed an interlocutory appeal for lack of jurisdiction following the denial of summary judgment because the movant argued the plaintiff "failed to present sufficient evidence to create a triable issue as to proximate cause" and "whether [the movant] knowingly or intentionally lied." 560 F.3d at 975. These are nearly identical to the issues East raises here. *See* OB 30 (arguing that "[t]he transcript of the interview shows that [East] believed the shooter shown on the surveillance tape was Mr. Tobias."); *id.* at 31 (arguing that, [i]f Officer East had not submitted a written statement, the result for Mr. Tobias would have been the same."). Because the District Court denied East's motion based on disputes of material fact and a determination of the sufficiency of the evidence (rather than a question of law), jurisdiction is wanting, as it was in *Johnson* and *Maropulos*.

Authorities cited by East actually support a conclusion that the Court lacks jurisdiction over this appeal. For example, in *Foster*, this Court concluded it lacked jurisdiction over claims where: (a) the district

court found genuine issues of material fact precluded summary judgment; (b) the "legal standards for plaintiff's" constitutional claims "are not in dispute"; and (c) where the officer claimed that the evidence was insufficient to show that he was liable under those standards. 908 F.3d at 1211-1212. All three factors are also present here.

Indeed, as *Foster* recognized, this Court "may not reweigh the evidence to evaluate whether the district court properly determined there was a genuine issue of material fact." *Id.* The *Foster* Court did exercise interlocutory jurisdiction over other claims, but only "[b]ecause the facts related to th[o]se claims [were] undisputed" and the appeal as to *those* issues raised only purely legal issues—for example, whether it was clearly established that the anonymous tip at issue could not provide reasonable suspicion for an investigatory stop. *Id.* at 1213-1214. There are no such purely legal questions at issue here.

In sum, given the basis for the District Court's denial of summary judgment, and the arguments East made below, this Court lacks jurisdiction over his interlocutory appeal.

## C. Despite His Claims Otherwise, East Challenges the District Court's Determination about the Sufficiency of the Evidence

East's opening brief confirms that his arguments rest on factual rather than legal disputes. East concedes that Tobias had a clearly established right not to be subject to criminal charges on the basis of fabricated evidence. OB 27. There is no dispute about the law relating to a Due Process claim for the fabrication of evidence.

East instead seeks interlocutory review by contending the District Court erred in concluding that the record is sufficient to show that he fabricated false statements identifying Tobias as the individual who shot Castaneda, and that these false statements caused Tobias harm. *See* OB 28 (identifying the issue as whether Tobias has provided "proof that [East] made a statement 'he knew to be false or would have known was false had he not recklessly disregarded the truth'"); *id.* (challenging whether Tobias has shown a reasonable likelihood that, absent the evidence fabricated by East, he would not have been criminally charged). As discussed above, this Court does not have jurisdiction to consider and resolve these fact-based inquiries, regardless of how East labels them.

East further claims he accepts Tobias's version of the material facts and the facts that the District Court determined could be proved by the evidence. OB 21, 25. But a review of East's arguments reveals this statement to ring hollow. For example:

- East presents as an uncontested fact that East "believed the shooter shown on the surveillance tape was Mr. Tobias." OB 30. This is a direct rejection of Tobias's contention that East knew that Tobias was too young and too small to be the shooter, as shown by his statements to the Detectives. SOF ¶¶105-08.

- East claims that he did not participate in the investigation of Tobias. OB 28. But, in addition to providing his false statement, East pulled photographs of Tobias in an attempt to find one resembling the shooter; provided the Detectives with "Field Interview" cards; suggested other law enforcement officers who might provide false identifications; and subsequently obtained and submitted a statement from Negroe. SOF ¶¶111-12.

- East asserts that the "probable cause declaration that Detective Cortina wrote in connection with the detention at juvenile hall referred to the visit by detectives to the school but did not even state that Officer East had made an identification." OB 31. But the probable cause declaration states that East identified Tobias as the shooter. SOF ¶¶184; 8-SER-1327–28. East concedes as much elsewhere in his brief. OB 17 ("The information provided to the deputy district attorney included the probable cause determination that referenced Officer East's identification during his interview at the school.").

- East presents as an uncontested fact that the "LAPD detectives arrested Mr. Tobias at the school before they had Officer East's written statement, based on Mr. Negroe's statement that he had seen Mr. Tobias outside and Detective Arteaga's identification of him as the person on the video." OB 31. But Tobias was arrested after East agreed to provide a false statement that he had identified Tobias as the shooter in the video, and the Detectives told him that their plan was to obtain additional identifications to "prov[e] what [East] just saw" on the video. SOF ¶¶114, 116-17. Moreover, East's identification was included in Detective Cortina's probable cause declaration, but the declaration contains no reference to Negroe. *Id.* at ¶184.

- East asserts that no one helped him prepare his written statement falsely stating that he had identified Tobias as the shooter in the surveillance video. OB 15. But during the recorded meeting with the Detectives, the three officers discussed what the content of East's written statement should be. SOF ¶111. In addition, East had a second meeting with the Detectives after Negroe made no identification where they discussed the report. *Id.* at ¶¶114, 118-19.

East's treatment of the facts critical to his argument reveals the underlying jurisdiction problem with his appeal and his refusal to follow the summary judgment standard. East pays lip service to the principle that the Court cannot "entertain arguments about the sufficiency of the evidence." OB 22. Yet, East all but concedes he is asking this Court to do exactly that. His Summary of Argument reads as follows: "The difference between saying that he was 'fairly sure' Mr. Tobias was the

person on the video and saying that he had a 'hard time IDing that person' was not *sufficient* to support an inference of deliberate fabrication." OB 21, 22 (emphasis added). East characterizes the discrepancies between his written statement and his statements during his recorded meeting as the product of "carelessness" or a mere difference in "tone." *Id.* at 29.

In other words, East is arguing that the contradictions and differences between his audio-recorded and written statements must be viewed in the light most favorable to him, with all inferences in his favor. And if the Court does so, then the evidence in the record is insufficient to support Tobias's fabrication claim. The problem is two-fold: first, his request that this Court find all facts and inferences in his favor is not permitted at the summary judgment stage, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); and second, doing so as part of an effort to attack the sufficiency of the evidence falls outside this Court's interlocutory jurisdiction. *Johnson*, 515 U.S. at 307. The District Court recognized this, and found that a reasonable jury could determine the differences between the statements were "notable" and "intentional[]."

1-ER-5. East can prevail only if the Court ignores the requirements of summary judgment and resolves this factual dispute in East's favor.[5]

In short, East's discussion of the record shows that he repeatedly refuses to take all evidence and reasonable inferences in the light most favorable to Tobias. From top to bottom, East's arguments are premised and dependent on fundamental factual disputes. As a result, East cannot possibly present purely legal questions for the Court to consider on an interlocutory appeal, or, as explained below, in seeking a grant of summary judgment as a matter of law. *See Adams v. Speers*, 473 F.3d 989, 991 (9th Cir. 2007) (concluding the "exception to the normal rule prohibiting an appeal before a trial works only if the appellant concedes the facts and seeks judgment on the law"); *George*, 736 F.3d at 837 (explaining where the appellant does not make an argument regarding clearly established law that takes the facts in the light most favorable to the appellee, the Court will not do the appellant's work for it (citing *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 979 (9th Cir. 2012))).

---

[5] To the extent East suggest the existence of the recording of the meeting between himself and Detectives makes disputes of fact or inference impossible he is mistaken. *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ("[t]he mere existence of . . . footage of the incident does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that footage.").

### III. Even Assuming Appellate Jurisdiction, the District Court Correctly Concluded There Was Sufficient Evidence for a Reasonable Jury to Find that East Violated Tobias's Constitutional Rights by Fabricating Evidence

If the Court determines it has jurisdiction over this appeal, it still must take all facts and inferences in the light most favorable to Tobias, just as the District Court was required to do.[6] Consideration of the extensive evidence in the record, viewed in favor of Tobias, shows that (1) East knew that Tobias was too small to be the shooter in the surveillance video, (2) he could not identify the shooter in the video, (3) he wrote a report falsely stating that he had identified Tobias although he had not, and (4) East's fabricated identification and false statements became part of the probable cause determination, arrest

_____

[6] Tobias contends that, in dismissing many of the claims against East, the District Court did not follow this standard. However, under current law, Tobias is not permitted to challenge that determination at this juncture. In fact, Tobias's contention is that the District Court failed to fully construe the facts in Tobias's favor even though it properly reached the conclusion there was sufficient evidence on the fabrication claim. For example, on Tobias's facts, East did not make an actual identification from the video, *ever*. SOF ¶¶101-26. Instead, he repeatedly stated the person was too small to be a middle school student, merely said he was "thinking of Tobias," but even laughed when the officers said that they suspected Tobias and again affirmed Tobias was too small to be the shooter. *Id*. The District Court, however, did not completely characterize the evidence in this way. 1-ER-5–6.

report, and other investigative reports that was used to further the investigation and prosecute Tobias, leading to his wrongful conviction.

## A. Legal Standard

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1222 (9th Cir. 2018) (quoting *Anderson*, 477 U.S. at 248). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan*, 572 U.S. at 657 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

In *Tolan*, the Supreme Court emphasized the "importance of drawing inferences in favor of the nonmovant," while reversing the grant of qualified immunity because the lower court had failed to make inferences in the nonmovant's favor. *Id.* It is established that every reasonable factual inference must be drawn in favor of the party opposing the motion for summary judgment, from both direct and

circumstantial evidence. *See Coghlan v. Am. Seafoods Co. LLC.,* 413 F.3d 1090, 1095 (9th Cir. 2005) (plaintiff can defeat motion for summary judgment by pointing to either direct or circumstantial evidence); *see also, e.g., Baker v. Roman Catholic Archdiocese of San Diego*, 725 F. App'x 531, 532 (9th Cir. 2018) (reversing grant of summary judgment where district court "did not properly consider various pieces of circumstantial evidence in its summary judgment ruling").

## B. The District Court Correctly Concluded There Is Sufficient Evidence for a Reasonable Jury To Find, that East Fabricated Evidence against Tobias

The fact that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government" is a proposition that is "virtually self-evident." *Devereaux*, 263 F.3d at 1074-75. "[D]eliberate fabrication can be shown by direct evidence, for example, when 'an interviewer . . . deliberately mischaracterizes witness statements in her investigative report.'" *Spencer*, 857 F.3d at 793 (quoting *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1111 (9th Cir. 2010)). When direct evidence of fabrication is shown, the

investigator's knowledge or reason to know of the plaintiff's innocence need *not* be proved, because the Constitution "prohibits the deliberate fabrication of evidence whether or not the officer knows that the person is innocent." *Id.* at 800.

Direct evidence of fabrication includes false statements in police reports and declarations, such as reports that "contain[] evidence or statements" that were "never made," as well as authoring reports that are inaccurate or misleading. *Costanich*, 627 F.3d at 1112; *Caldwell*, 889 F.3d at 1112 (triable issue of fact as to evidence fabrication where allegation included the claim that the officer authored "falsified notes").

Here, Tobias alleges that East agreed to fabricate and actually fabricated a purported identification of Tobias as the shooter of Castaneda that he never actually made. During his meeting with Detectives, East was shown the surveillance video of the shooter several times, told by the Detectives that their suspect was a Berendo middle school student, and asked to try to make an identification from the Berendo student body. SOF ¶104. But East told the Detectives he could not make an identification and that the shooter was too large to be a middle school student. *Id.* ¶¶105-07. Even when the Detectives told him

that Tobias was their suspect, East immediately laughed and again observed that Tobias was "so much smaller." *Id.* ¶109. East's unvarnished reaction was consistent with the surveillance video, which makes clear that East could not have believed that Tobias shot Castaneda based on the size difference between Tobias (a 5-foot, 111-pound boy) and the shooter seen in the video (a 6-foot tall, 200-pound man). *Id.* ¶¶63, 65.

East knew that Tobias was too small to be the shooter, but nevertheless agreed to help the Detectives implicate him by providing a false written statement claiming he had identified Tobias from the surveillance video. *Id.* ¶¶110-11. They even discussed what the content of East's statement would be, and East agreed to further assist the Detectives, including by providing pictures of Tobias and helping to procure identifications from others. *Id.* ¶¶111, 116.

In addition to East's actions in agreeing to fabricate a false "identification" of Tobias, East's written report constitutes fabricated evidence—it includes not only statements that were misleading and inaccurate, *Costanich*, 627 F.3d at 1111, but also statements that were "never made." *Caldwell*, 889 F.3d at 1112. East wrote: "I watched the

video several times and *stated* that I was fairly sure that the Suspect in the video *is* Art Tobias." SOF ¶122 (emphasis added). This includes two things that East never said: (1) he "stated" that he was "fairly sure"; and that he "stated" that the person *is* Art Tobias. A reasonable jury can further conclude East's statement is fabricated because it contrasts starkly with East's comments during the meeting that the perpetrator was *not* a middle schooler. In fact, East's comments to the Detectives were very nearly the opposite of his written statement: he repeatedly failed to make an identification from the video, said he would have a hard time doing so, and acknowledged that the shooter was too large to be Tobias (or any middle school student).

East also included in his statement that "the person in the video had a distinct walk and stature which is similar to that of Art Tobias." *Id.* ¶123. East never made such an observation during his meeting with the Detectives, but added this explanation after the fact in an effort to bolster his false identification. As the District Court recognized, the

foregoing evidence is sufficient to allow a reasonable jury to find for Plaintiff.[7]

East tries to minimize the disparity between his oral statements at the meeting and his written statement, saying any differences are ones of "tone or characterization" or the result of carelessness. OB 28-29. This Court has already rejected an argument that it can treat false statements as "errors" or careless "misstatements." *See Costanich*, 627 F.3d at 1113; *id.* (concluding that "[r]eporting that a witness said something she did not cannot be . . . characterized" as a "misstatement"). Indeed, such a conclusion is "untenable in light of the principle that, on summary judgment, we must draw all factual inferences in favor of the nonmoving party." *Id.*

The record, especially when taken with all inferences in Tobias's favor, shows that East knew the shooter was not Tobias but deliberately provided false evidence to the contrary, all while knowing that the

---

[7] Moreover, East's report omits critical information about his meeting with the Detectives—facts that make the report completely misleading. For example, East's report does not mention that the Detectives told him Tobias was their suspect before he wrote his statement and that they needed identifications of Tobias to make their case. Nor does it mention that East assisted them in an effort to obtain additional identifications. SOF ¶126.

Detectives intended to use that evidence to prosecute Tobias for murder. This is a particularly strong conclusion when contextualized by the fact that East wrote this statement *after* the Detectives specifically laid out their plan to try to get more identifications, including from Tobias's mother, otherwise they would have trouble "proving what [East] just saw"; that the statement was written *after* East learned that another person (Negroe) had *not* made an identification; *and* where East assisted the officers in obtaining Mr. Negroe's statement that blatantly attempts to "walk back" what he said contemporaneously and where he did not identify Tobias (who was not at all "chubby"). SOF ¶¶112-13.

On these facts, a reasonable jury can easily find that East's written statement was not "careless" or a difference in characterizing East's state of mind. But, even if it boiled down to state-of-mind, such a dispute (like causation), is yet another quintessential jury question not ripe for adjudication at summary judgment. *See Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002); *Provenz v. Miller*, 102 F.3d 1478, 1489-90 (9th Cir. 1996); *e.g.*, *Jensen v. Stangel*, 762 F.2d 815, 818 (9th Cir. 1985)

(noting that an officer's defense "required the jury to resolve a number of factual questions, including the officer's state of mind").[8]

In short, Tobias has presented ample evidence that East's statement was fabricated, especially when the facts and inferences are taken in his favor. It is for a jury, then, to determine how to ultimately resolve the parties' disputes about the interpretation of that evidence. *See Caldwell*, 889 F.3d at 1115 (concluding that "there [was] a triable issue as to whether [he] intentionally fabricated his notes" where they contained statements that, because the witness disputed saying them, could not be characterized as careless errors); *Costanich*, 627 F.3d at1113 ("[R]eporting that a witness said something she did not cannot be . . . characterized [as a mere misstatement].").

---

[8] State of mind or intent goes directly to East's credibility, which is for the jury. *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("[c]redibility determinations . . . are jury functions"); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) (explaining that issues of intent are generally best reserved for a jury). Questions of intent are also not appropriate for resolution on interlocutory review and exceed interlocutory jurisdiction. *See Johnson*, 515 U.S. at 316 (questions about intent are factual controversies that exceed interlocutory jurisdiction); *Stinson v. Gauger*, 868 F.3d 516, 526 (7th Cir. 2015) (*en banc*) (dismissing appeal on fabrication claim because whether the defendants' statements "were intentionally fabricated or honestly mistaken is a question of fact, not a question of law").

## C. The District Court Correctly Concluded that There Is Sufficient Evidence for a Reasonable Jury To Find East's Actions Harmed Tobias

To establish causation, a plaintiff need only demonstrate that the fabricated evidence contributed to his injuries in some way; *e.g.*, by contributing to an arrest, commencing or advancing the criminal prosecution or detention, or by sustaining a conviction. *See Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012). "The actions of an official who fabricates evidence that later is used to deprive someone of liberty can be both a but-for and proximate cause of the due process violation." *Id*. Proximate cause exists where "the injury is of a type that a reasonable person would see as a likely result of the conduct in question," *Spencer*, 857 F.3d at 798 (citing *Whitlock*, 682 F.3d at 582-83), as the Supreme Court long ago held § 1983 must be read "against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Monroe v. Pape*, 365 U.S. 167, 189 (1961); *see Stoot v. City of Everett*, 582 F.3d 910, 926 (9th Cir. 2009) (finding causation with regard to statements submitted in a criminal prosecution because police officers "are generally responsible for the 'natural' or 'reasonably foreseeable' consequence of their actions").

Under these rules, "a § 1983 plaintiff need not be convicted on the basis of the fabricated evidence to have suffered a deprivation of liberty—being criminally charged is enough." *Caldwell*, 889 F.3d at 1115 (citing *Devereaux*, 263 F.3d at 1074-75, and NINTH CIR. JURY INSTR. § 9.33). As a result, police conduct that becomes part of the "evidentiary record" in the authorization of the charges against the plaintiff is sufficient to permit a jury to find causation. *Id.; see also Gregory,* 444 F.3d at 741 (holding that officer's investigatory notes "were the result of pretrial fabrication efforts by [the officers]," and "comprise[d] part of the documentary record before the prosecution and defense and affected the course of the criminal proceedings independent of any testimony to the notes' contents. . . . Their very existence, even if not introduced as evidence at trial, affected Plaintiff's criminal prosecution."). Thus, officers who submit false reports "may be held liable for damages incurred as a proximate result of those reports," *Blankenhorn v. City of Orange*, 485 F.3d 463, 482 (9th Cir. 2007) (citing *Barlow v. Ground*, 943 F.2d 1132, 1136 (9th Cir. 1991)), and such preliminary steps are a "cause in fact" of a subsequent seizure order. *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981)

Here, there is zero dispute that the criminal prosecution of Tobias was commenced with the support of East's actions in fabricating a purported "identification" of Tobias. East's "identification" was part of the probable cause determination/declaration to support the arrest, was part of the arrest report, and was further supported by East's own fabricated statement, which was undisputedly in the LAPD "Murderbook" for the prosecution of Tobias. There is no dispute these documents were part of the "evidentiary" or "documentary" record in the criminal prosecution, which have been sufficient to permit a reasonable jury to find they impacted the arrest, detention, and prosecution of Tobias in some way. *See Caldwell*, 889 F.3d at 1115; *Gregory,* 444 F.3d at 741. At minimum, these undisputed facts—and authorities cited above—amply illustrate a reasonable jury could find that East's fabrications caused Tobias some measure of harm.  The natural and foreseeable consequence of East's fabrications is that Tobias would be wrongfully arrested, prosecuted, and convicted of a shooting he did not commit. And he was. *See Stoot*, 582 F.3d at 926 (concluding that "the use of the allegedly coerced statements against [the plaintiff] was a reasonably foreseeable consequence of Jensen's

decision to interrogate [the plaintiff] and file a police report detailing his alleged confession"). This is sufficient at summary judgment.

East claims that, irrespective of his own false statements and report, "the result for Mr. Tobias would have been the same." OB 31. This conclusory and undeveloped argument is without merit. First, to the extent East is arguing that there was an independent and intervening cause of Tobias's injury, he has failed to identify it.[9] *See Stoot*, 582 F.3d at 926 (noting that liability might not attach if there is an intervening cause that breaks the chain of causation). Regardless, the question of intervening cause is one for the jury. *See Farr v.NC Machinery Co.*, 186 F.3d 1165, 1168 n.7 (9th Cir. 1999) (question of intervening cause is one of fact, not law).

And second, East's argument rejects the ample evidence in the record showing that East's false identification caused Tobias harm. The Detectives themselves identified East's fabricated identification as critical, telling East that they needed his identification to make the case

---

[9] Given the record and the explicit discussion (of attempting to "rope" Tobias and his mother into the prosecution) that East was aware of and participated in, there is no credible argument that any other subsequent misconduct would be truly independent of East's actions— they were part and parcel of the same course of conduct of which East agreed to, and did, participate in.

against Tobias. SOF ¶110-14, 116. The Detectives also told East that they needed additional identifications or they would "have a hard time proving what [East] just saw." *Id.* ¶114. The Detectives subsequently included East's "identification" in the Chronological Record supporting the investigation and prosecution. *See* 8-SER-1332–38.

And East's purported (though false) "identification" was part of probable cause determination used to arrest and charge Tobias in the first place, *Id.* ¶¶185-85.[10] East nonetheless disputes the significance of this fact, stating that the probable cause determination "did not even state that Officer East had made an identification." OB 31 (citing 4-ER-385. This statement is extremely misleading, and indicative of how far East has departed from the standards that govern summary judgment. The form states:

> The video depicting the shooting was downloaded and shown to (2) LAPD Officers and (1) LAUSD Police Officer. Officers identified one of the shooters as being Art Tobias.

8-SER-1325–26. This undoubtedly is a reference to East—there are no other LAUSD officers who spoke to the Detectives. Moreover, East

---

[10] East suggests that East's report was essentially put "in a drawer" and never used. OB 30-31. This contention is contradicted by other evidence in the record.

concedes that his purported identification was also included in the Detectives' follow-up investigation report. OB 31. In short, the undisputed fact is that East's purported identification—which a reasonable jury could conclude was false and fabricated—*was* part of the evidence used to detain and prosecute Tobias.

East claims Tobias was arrested before the officers had obtained a copy of East's written statement. *Id.* First, that is merely another contested fact. East even admits he may have written his report the same day that he participated in the recorded meeting and went to LAPD with the other officers and Tobias. 3-SER-313–14. Moreover, the recording includes East and the Detectives discussing what would be written in their reports, another meeting was had about writing East's report, and East's report is on LAPD forms. Put simply, East again fails to construe the record in the light most favorable to Tobias, as he must.

East contends that Tobias was arrested "based on Mr. Negroe's statement that he had seen Mr. Tobias outside and Detective Arteaga's identification of him as the person on the video." OB 31. He identifies no evidence in the record to support this, and any such conclusion would undoubtedly require the Court to take the evidence in the light most

favorable to East—something it cannot do at this stage. Regardless, the fact that additional fabricated evidence was used to frame Tobias does not alter the role that East's false identification played in the wrongful prosecution and other injuries suffered by Tobias. *See Spencer*, 857 F.3d at 801 ("A rule of law foreclosing civil recovery against police officers who fabricate evidence, so long as they have other proof justifying the institution of the criminal proceedings against a defendant, would not follow the statute's [§ 1983] command or serve its purpose." (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 293 (3d Cir. 2014))). Courts have long-recognized that "it is common for injuries to have multiple proximate causes." *See Mendez v. Cty. of Los Angeles,* 897 F.3d 1067, 1078 (9th Cir. 2018) (quoting *Staub v. Proctor Hosp.,* 562 U.S. 411, 420 (2011)).[11]

---

[11] Different rules apply with regard to but-for cause related to multiple tortfeasors. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 383 (2013) (noting "near universal agreement that the but for standard is inappropriate when multiple sufficient causes exist" (citing 1 RESTATEMENT (THIRD) OF TORTS § 27, COMMENT A, p. 385 (2005)); *see also Paroline v. United States*, 572 U.S. 434, 451-52 (2014) ("[T]ort law teaches that alternative and less demanding causal standards are necessary in certain circumstances to vindicate the law's purposes. It would be anomalous to turn away a person harmed by the combined acts of many wrongdoers simply because none of those wrongdoers alone caused the harm. And it would be nonsensical to adopt a rule whereby individuals hurt by the combined wrongful acts of many . . . would have no redress, whereas individuals hurt by the acts of one

East's remaining argument regarding causation is that the District Court failed to cite evidence supporting its finding that East's fabricated statement could have "carried weight with the prosecutor or judge." OB 32 (emphasis in original). East's argument is contrary to the law of this Circuit, including *Caldwell*, *Spencer,* and the *en banc* decision in *Devereaux*. East ignores the independently dispositive fact that his purported "identification" was part of the probable cause determination, and that the District Court noted that East was the only "identifying" officer who knew Tobias and was not employed by the Los Angeles Police Department. 1-ER-6. Moreover, East's argument contradicts his own testimony, where he admits that he met with the prosecutor and discussed, explicitly, the report Tobias contends was fabricated in advance of his trial testimony. 3-SER-313–14. In fact, it is East who provides no evidence to support his conclusion that Tobias would have been arrested and prosecuted absent East's false "identification."

---

person alone would have a remedy."). In this situation, consistent with *Devereaux*, *Arnold*, *Gregory*, *Whitlock*, and other authorities, "legal cause is a cause that is a substantial factor in bringing about the harm." *Nassar*, 570 U.S.at 383. That standard was met here, and a reasonable jury could easily find for Tobias against East as one of several tortfeasors.

In the end, as noted above, the question of causation cause is "intensely factual" and therefore in the province of the jury, not the judge at summary judgment (and certainly not for an interlocutory appeal). *Pacific Shores Properties*, 730 F.3d at 1168 (citing *White*, 901 F.2d at 1505-06); *see also Prosser v. Crystal Viking F/V,* 940 F.2d 1535 (9th Cir. 1991) (citing *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981)) (proximate cause is generally a question for the jury);; *cf. Whitlock,* 682 F.3d at 583 (explaining that the question of what role the fabricated evidence played in depriving plaintiff of his liberty is a fact-specific inquiry into causation where "multiple proximate causes are often present" and "an actor's tortious conduct need not be close in space or time to the plaintiff's harm to be a proximate cause." (citing REST. 3D TORTS § 29 cmt. b.)); *Mendez,* 897 F.3d at 1078 ("The officers' argument ignores the fact that 'it is common for injuries to have multiple proximate causes.'" (quoting *Staub,* 562 U.S. at 420)).

The denial of summary judgment on this claim was proper.

## CONCLUSION

This appeal should be dismissed for want of jurisdiction. Even assuming this Court has jurisdiction, East's arguments fail on the merits. The cause should be remanded for trial.

Respectfully Submitted,

ART TOBIAS

By: /s/ Megan Pierce

Anand Swaminathan
David B. Owens
Megan Pierce
LOEVY & LOEVY
311 N. Aberdeen St, 3rd Fl.
Chicago, Illinois 60607
(312) 243-5900

## STATEMENT OF RELATED CASES

The appeal of four of the other defendants in this action—

Michael Arteaga, Jeff Cortina, J. Motto and Julian Pere—is pending

before this Court under Case No. 18-56360.

Officer East's earlier appeal was under Case No. 18-56245.

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 20-55845

I am the attorney or self-represented party.

**This brief contains** | 10,549 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ○ ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ○ ) is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ○ ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ○ ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ( ○ ) it is a joint brief submitted by separately represented parties;

    ( ○ ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ○ ) a party or parties are filing a single brief in response to a longer joint brief.

( ○ ) complies with the length limit designated by court order dated [            ].

( ○ ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Megan Pierce | **Date** | Mar 17, 2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                               *Rev. 12/01/2018*

## CERTIFICATE OF SERVICE

I, Megan Pierce, an attorney certify that, on March 17, 2021, I caused the foregoing to be filed via the Court's electronic filing system, which effected service on all counsel of record.

I certify that all participants in this matter are registered CM/ECF users.

/s/ Megan Pierce