# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

ART TOBIAS

Plaintiff-Appellee

v.

DANIEL EAST, L.A. School Police Officer, No 959

Defendant-Appellant

and

CITY OF LOS ANGELES, et al.,

Defendants

---

On Appeal from the United States District Court
for the Central District of California
No. 2:17-cv-01076-DSF-AS
Hon. Dale S. Fischer, United States District Judge

---

## APPELLANT'S REPLY BRIEF

---

Calvin House
GUTIERREZ, PRECIADO & HOUSE, LLP
3020 E. Colorado Blvd.
Pasadena, CA 91107
Telephone: 626-449-2300 | Fax: 626-449-2330
calvin.house@gphlawyers.com

Attorneys for Appellant Daniel East

# Table of Contents

Table of Contents ....................................................................................i

Table of Authorities ...............................................................................ii

1. Introduction ......................................................................................1

2. Argument ...........................................................................................2

   A. Mr. Tobias has not shown that this Court lacks jurisdiction to review the District Court's denial of Officer East's qualified immunity defense. .................................2

   B. There was no substantial difference between the statements Officer East made during his interview and his characterization of them in his written statement. ..................................................................................10

   C. Officer East's written statement was not the cause of Mr. Tobias's injury. ...............................................................12

      i. To prove that a deliberate falsification was the cause of his injury, Mr. Tobias must point to some evidence that Officer East's written statement was the but-for cause of his injury, that is, that the injury would not have occurred in the absence of the written statement. ..........................................12

      ii. There was no evidence that Officer East's written statement was a but-for cause of injury to Mr. Tobias. ..................................................................14

3. Conclusion ......................................................................................18

4. Certificate of Compliance with Rule 32(a) ...................................19

# Table of Authorities

**Cases**

*Behrens v. Pelletier,*
  516 U.S. 299, 312-13 (1996) ....................................................... 2

*Black v. Montgomery County,*
  835 F.3d 358 (3d Cir. 2016) ....................................................... 12

*Caldwell v. City & County of San Francisco,* 889 F.3d
  1105 (9th Cir. 2018) ............................................................. 12, 13

*Collins v. Jordan,*
  110 F.3d 1363, 1370 (9th Cir. 1996) .......................................... 2

*Costanich v. Department of Soc. & Health Servs.,*
  627 F.3d 1101 (9th Cir. 2009) ................................................. 10

*Estate of Anderson v. Marsh,*
  985 F.3d 726 (9th Cir. 2021) ..................................................... 3

*Foster v. City of Indio,*
  908 F.3d 1204 (9th Cir. 1018) ................................................... 3

*Gregory v. City of Louisville,*
  444 F.3d 725 (6th Cir. 2006) ................................................... 14

*Jeffers v. Gomez,*
  267 F.3d 895 (9th Cir. 2001) ..................................................... 3

*Mendocino Envtl. Ctr. v. Mendocino Cty.,*
  192 F.3d 1283 (9th Cir. 1999) ................................................. 12

*Pauluk v. Savage,*
  836 F.3d 1117 (9th Cir. 2016) ................................................... 2

*Spencer v. Peters,*
  857 F.3d 789 (2017) ............................................................... 12

*Whitlock v. Brueggemann,*
  682 F.3d 567 (2012) ............................................................... 13

*Wilkinson v. Torres,*
    610 F.3d 546 (9th Cir. 2010) ..................................................... 3

**Other Authorities**

Fed. R. App. P. 32 ........................................................................ 19

# 1.    Introduction

The answering brief misapprehends the extent of jurisdiction on appeals from the denial of qualified immunity, distorts the record, misstates the causation standard for falsification claims, and fails to focus on Officer East's written statement when analyzing causation.

The limits on jurisdiction over qualified immunity appeals do not prevent this Court from looking behind the District Court's opinion that the written statement "could have contributed" to Mr. Tobias's harm. When it does so, the Court will see that there is no evidence to support that conclusion. Because Mr. Tobias would have been arrested, charged, tried, and convicted even in the absence of the written statement, this Court should reverse and direct the District Court to enter summary judgment for Officer East.

## 2. Argument

### A. Mr. Tobias has not shown that this Court lacks jurisdiction to review the District Court's denial of Officer East's qualified immunity defense.

As this Court and the Supreme Court have recognized, "a court of appeals has jurisdiction over an appeal from a denial of qualified immunity, even when the district court's order concludes that there are disputed issues of material fact."[1] Nor is this Court required to accept every contention that Mr. Tobias makes about what the evidence shows. It "must 'view the facts and draw reasonable inferences "in the light most favorable to the party opposing the [summary judgment] motion.'" [Citation omitted] However, when the facts, as alleged by the non-moving party, are unsupported by the record such that no reasonable jury could believe them, [the Court] need not rely on those facts for purposes of ruling on the summary

---

[1] *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016). See also *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996) ("Denial of summary judgment often includes a determination that there are controverted issues of material fact . . . and *Johnson* surely does not mean that every such denial of summary judgment is nonappealable"); *Collins v. Jordan*, 110 F.3d 1363, 1370 (9th Cir. 1996) ("a denial of summary judgment on qualified immunity grounds is not always unappealable simply because a district judge has stated that there are material issues of fact in dispute").

judgment motion.[2] This Court explained the standard earlier this year in *Estate of Anderson v. Marsh*:

> Although we may not review on interlocutory appeal claims that a plaintiff has presented insufficient evidence, we have held that we may review claims that a plaintiff has presented no evidence such that his arguments about the illegality of a defendant's conduct are premised on "bare allegation[s]." *Foster [v. City of Indio]*, 908 F.3d [1204] at 1217 [(9th Cir. 1018)]; *id.* at 1217-18 (holding, on interlocutory review, that "the district court erred in finding a genuine dispute" of fact as to whether the defendant officer approached the plaintiff with his gun drawn because the plaintiff's "bare allegation alone, without any evidence in the record, is insufficient to conclude that [the officer] did anything more than unholster his gun"); *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001) (determining that there was jurisdiction to review and reverse the district court's holding that the defendants' motive was in dispute when there was "no evidence of bad motive," even when the record was "viewed in the light most favorable to the plaintiff").[3]

As explained in the opening brief, Officer East's two arguments for reversal meet this standard. First, he asks the Court to determine whether any differences there may be between the transcript of his

---

[2] *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010).

[3] 985 F.3d 726, 731 n.3 (9th Cir. 2021). See also *Jeffers*, *supra*, 267 F.3d 895 at 907 ("When there is an allegation about the conduct part of the equation, but insufficient evidence of that conduct to create a genuine issue of material fact, our cases permit review").

interview and his written statement are trivial. If the differences were not trivial, he asks the Court to consider whether there was "any evidence" to support the District Court's speculation that Officer East's written statement "could have contributed to Plaintiff's harm." [1 ER 6]

The "facts" that Mr. Tobias claims Officer East may not dispute on appeal are not actually facts, but contentions based on argumentative assertions in his separate statement:

Referring the Court to four paragraphs in his separate statement, Mr. Tobias claims that Officer East impermissibly disputed his "contention that East knew that Tobias was too young and too small to be the shooter." [Answering Brief, p. 30] The evidence cited for that contention is 17 lines from the transcript of Officer East's interview, which do not contain any such statement:

> OFFICER EAST: Right about now. So he's even on his cell phone, huh?
>
> OFFICER MOTTO: Mm-hmm.
>
> OFFICER EAST: I have a hard time IDing that person.
>
> OFFICER MOTTO: Okay. No problem.
>
> OFFICER EAST: I mean, the full head of hair is throwing me off a little bit.

OFFICER MOTTO: Okay.

OFFICER EAST: Unless he shaved it and he did have more hair last week.

OFFICER MOTTO: Who are you thinking of?

OFFICER EAST: The guy that I was thinking of is a lot smaller in stature, though.

OFFICER MOTTO: Okay.

OFFICER EAST: It's Art Tobias.

OFFICER MOTTO: That's who we think it is.

[2 ER 105:11-106:3] Disputing Mr. Tobias's characterization of that evidence does not create a factual dispute.

Although Mr. Tobias argues that Officer East claims not to have participated in the investigation [Answering Brief, p. 30], there is no such argument in the opening brief. The paragraphs in the separate statement cited to dispute this unasserted argument refer to things that Officer East did or said during his recorded interview *before* he prepared the written statement. [See PER 213, ¶¶ 111-112, which refer to five pages from the transcript of the recorded interview, appearing at 2 ER 106-09, 112] They are not relevant to determining whether the written statement was an actionable falsification.

Although Mr. Tobias claims to see a dispute about sufficiency of the evidence in a statement in the opening brief about the probable cause declaration prepared by Officer Cortina [Answering Brief, p. 30], the declaration speaks for itself as follows:

> The video depicting the shooting was downloaded and shown to (2) LAPD Officers and (1) LAUSD Police Officer. Officers identified one of the shooters as being Art Tobias.

[4 ER 385] On appeal from the denial of qualified immunity, the Court has jurisdiction to read that statement and determine whether it constitutes any evidence that Officer East's written statement injured Mr. Tobias.

Although Mr. Tobias disputes the claim that the LAPD detectives arrested him before they had Officer East's written statement [Answering Brief, p. 31], the sequence of events is not subject to dispute. After the detectives interviewed Mr. Negroe, he told them he had seen the individual he thought appeared on the video. Based on that statement and his own review of the video, Detective Arteaga then arrested Mr. Tobias. [2 ER 70:16-20; 3 ER 258B ¶ 8] Only after the arrest did Officer East prepare his written statement.

Although Mr. Tobias purports to dispute Officer East's statement in his declaration that no one helped him prepare his written statement [Answering Brief, p. 31], that is based on argumentative assertions in his separate statement. The evidence cited for those assertions (the interview transcript and part of the LAPD's chronological report) does not support his assertion that the LAPD detectives helped Officer East prepare his written statement. [See 2 PER 213-15 ¶¶ 111, 114, 118-19]

> OFFICER EAST: It's Art Tobias.
>
> OFFICER MOTTO: That's who we think it is.
>
> OFFICER EAST: (Laughter.) But, I mean, God, he's so much smaller in real life.
>
> OFFICER MOTTO: You have the book? Can I see the picture that the mother gave?
>
> OFFICER EAST: He just recently shaved his head. He came to work -- came to school this morning with a shaved head.
>
> OFFICER ARTEAGA: He's here? OFFICER EAST: Yeah. He came this morning.
>
> OFFICER ARTEAGA: He said he's here.
>
> OFFICER MOTTO: Uh-uh. Not yet. I don't want him this fast class. (Inaudible.)
>
> OFFICER EAST: Not on a 187. Someone actually died from this?

OFFICER MOTTO: This is a picture his mother gave us. Is that -- Is that how he looked before the bald head?

OFFICER EAST: Yeah. That's accurate. I could give you a school photo from last year if he took one. His schedule (inaudible).

OFFICER MOTTO: Uh.

OFFICER EAST: If you don't need it, I can (unintelligible.) That's fine.

OFFICER MOTTO: I'd like to see it, at least if you have an accurate one there, just so we can com- -- That could be what that is. I don't know. So normally, he has the hair. But today, he came in balded.

[2 ER 106:2-107:7]

OFFICER ARTEAGA: So what did he say when he saw it?

OFFICER MOTTO: He watched it a couple of times, and he said, "He looks like somebody I know."

OFFICER EAST: I think that's the same photo, isn't it?

OFFICER MOTTO: It might be. Black shirt, no. It's different. Well, I don't know. I have it's cut off. All I have is his head. Alls I have is this. I think he looked younger there than in this one here.

OFFICER EAST: This could be last year's photo.

OFFICER MOTTO: I mean, the mother supplied this. So she could have taken this with her own phone.

OFFICER EAST: Yeah.

OFFICER MOTTO: He looked, and when he saw it, he said, "Well, he looks bigger than the guy I'm thinking of. And the guy I'm thinking of, the hair is throwing me off.

8

So then, he said, "The guy I'm thinking about came in with a shaved—"

OFFICER EAST: Yeah. The photo—The photo makes him look a little bit more bigger and stockier. But from that photo right there ...

[2 ER 108:13-109:15]

OFFICER MOTTO: Yeah. Well, and the whole thing is this is what we have. So if I don't get it from everybody, including his mother, then we may have a hard time proving what you just saw. So somebody's going to have to frickin pay–

[2 ER 113:1-5]

| 8/29/12 Wed | 1430 | Cortina—Telephoned Berendo Middle School and spoke with LAUSD Police Officer East who stated he would provide a written statement of the interview between he and Det's Motto & Arteaga regarding the identification of subj Tobias. I advised him I needed a written statement from Dean Negroe as well, he stated he would assist the Dean in completing one. |
| --- | --- | --- |
| 9/4/12 Tues | 1445 | Cortina—Telephoned Berendo Middle School (twice) left a voice message for Dean Negroe and called back and left a voice message for Daniel East, LAUSD Police Officer requesting the statement forms again. Officer East showed up at the station and provided me with statement forms for both he and Dean Negroe. |

[8 PER 1326-27]

**B.** **There was no substantial difference between the statements Officer East made during his interview and his characterization of them in his written statement.**

As explained in the opening brief, not all inaccuracies in a police officer's report give rise to a deliberate falsification claim. Errors based on "questions of tone or characterization" are not enough.[4] In an attempt to establish that element of his claim, Mr. Tobias creates a false conflict between Officer East's interview and his written statement. But that is based on his characterization of the two rather than on the actual statements.

Although the answering brief claims that Officer East told the LAPD detectives that he could not make an identification, he never said that. He said, "I have a hard time IDing that person." He then went on to explain that the full head of hair on the person in the video was "throwing me off a little bit," pointing out that Mr. Tobias had "just recently shaved his head," and had "more hair last week." [2 ER 105:14-21] Before the detectives said that they thought Mr. Tobias was the shooter, Officer East said that he was "thinking of"

---

[4] *Costanich v. Department of Soc. & Health Servs.*, 627 F.3d 1101, 1113 (9th Cir. 2009).

Mr. Tobias when he watched the video, and that the picture obtained from Mr. Tobias's mother looked like Mr. Tobias before he shaved his head. [2 ER 105:23-106:21]

Although that identification may have been equivocal, so was Officer East's written statement. There, he said that he was "fairly sure," but noted that the video made the suspect look "slightly taller and thicker." [4 ER 387] He made comments during the interview that were consistent with that assessment. [2 ER 104:13-14 ("looks like a large student to be a middle school student"), 105:23-24 ("guy that I was thinking of is a lot smaller in stature"), 106:5 ("he's so much smaller in real life"), 110:1-2 ("he looked, like, taller and bulkier in the camera").

The answering brief also argues that writing "The Person in the video had a distinct walk and stature which is similar to that of Art Tobias" was a fabrication, because Office East had not said so during the interview. [Answering Brief, p. 12] But it does not cite any evidence to support its argument that Officer East supposedly included this statement to bolster his false identification.

Any discrepancies there may have been between Officer East's statements during his interview and his written statement do not establish the deliberate falsification necessary to prove a due process violation.

**C. Officer East's written statement was not the cause of Mr. Tobias's injury.**

*i. To prove that a deliberate falsification was the cause of his injury, Mr. Tobias must point to some evidence that Officer East's written statement was the but-for cause of his injury, that is, that the injury would not have occurred in the absence of the written statement.*

To prevail on a deliberate fabrication claim, the plaintiff must establish that the fabrication was "the cause in fact and proximate cause of his injury."[5] In other words, there must be a "reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged."[6]

---

[5] *Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018).

[6] *Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016), cited with approval in *Spencer v. Peters*, 857 F.3d 789, 798 (2017). See also *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1295 (9th Cir. 1999) (plaintiff must establish that, "without the dishonestly included or omitted information . . . the affidavit is insufficient to establish probable cause").

The authorities cited in the answering brief for a lesser standard are not dispositive. In *Whitlock v. Brueggemann*, 682 F.3d 567 (2012), the Seventh Circuit did not say that fabricated evidence need only contribute to a plaintiff's injury to be actionable. To the contrary, the court stated that fabrication of evidence by itself does not impair a constitutional right. To establish the constitutional violation, plaintiff must provide evidence that the fabrication was a but-for cause of his injury. In the case before it, the fabricated evidence was "instrumental" in the plaintiffs' conviction.[7] As explained below, that is not the case here, where Officer East's written statement played no role in Mr. Tobias's conviction.

In *Caldwell, supra*, this Court did not say that the presence of a fabricated statement in the "evidentiary record" by itself was enough to prove causation. There was evidence in that case, including the prosecutor's own declaration, that the prosecutor reviewed the fabricated statements in making his decision to file charges.[8] As explained below, there is no such evidence in this case.

---

[7] 682 F.3d at 582.

[8] *Caldwell, supra*, 889 F.3d at 1117.

The portion of the Sixth Circuit's decision in *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006) cited in the answering brief was not concerned with the causation element of a fabrication claim. It dealt with the question of whether a forensic examiner's falsified report was protected by the absolute immunity accorded to testimonial acts. The court concluded that the report was not protected by absolute immunity, and noted that the prosecutors had relied on the report to continue their prosecution of the plaintiff and that the report was a "significant component" of the evidence in the criminal proceedings and affected the course of those proceedings.[9] As explained below, there is no evidence that Officer East's written statement played a similar role in this case.

## ii. *There was no evidence that Officer East's written statement was a but-for cause of injury to Mr. Tobias.*

The sequence of events that led to Mr. Tobias's conviction began with the murder in the early morning hours of August 12, 2012. Not long afterward, two LAPD officers viewed the surveillance video at the murder scene and said that they recognized the shooter

---

[9] 444 F.3d at 741.

as Mr. Tobias. [2 ER 65-66; 6 PER 867-73, 897-902] At an investigative conference on the morning of August 20, 2012, the detectives on the case decided to pursue Mr. Tobias as a suspect. [2 PER 211] When Detectives Arteaga and Motto left for Berendo Middle School that afternoon, there were no other suspects. Mr. Tobias had become the focus of the investigation.

At the school, the detectives first interviewed Officer East, who told them that he was "thinking of" Mr. Tobias when he watched the surveillance video. [2 ER 105-06] They then spoke with Mr. Negroe who could not identify the person on the video as a Berendo student. After he left the interview, Mr. Negroe saw Mr. Tobias and informed the detectives he believed that Mr. Tobias matched the person he had seen on the video. [3 ER 258B] Detective Arteaga believed that the person Mr. Negroe identified was the shooter depicted in the video. He then arrested Mr. Tobias. [2 ER 70-72] Detective Arteaga took Mr. Tobias to the LAPD station, where he was interrogated and confessed to the murder. [2 PER 217-227]

All of those events took place *before* Officer East prepared his written statement. Since Officer East's written statement did not

play any role at the trial, the dispositive question is whether there is any evidence to show that the alleged fabrication in the written statement had an effect on the decision to hold Mr. Tobias in juvenile hall, or on the prosecutor's decision to file charges. The answering brief relies on three pieces of evidence, none of which can provide the causative link:

1. Detective Cortina wrote a probable cause declaration at 11:45 p.m. on August 20 that he submitted to the judicial officer at juvenile hall to determine whether Mr. Tobias would be held. [2 ER 72A-C] The declaration did not refer to the written statement. The declaration stated that the surveillance video was "shown to (2) LAPD Officers and (1) LAUSD Police Officer. Officers identified one of the shooters as being Art Tobias." [4 ER 385] The characterization of the LAUSD Police Officer as having "identified" Mr. Tobias as the shooter is Officer Cortina's. There is no evidence that he even had the written statement when he prepared the declaration.

2. The LAPD chronological record refers to Officer East's recorded interview in an entry for August 20, 2012, at "1530" (3:30 p.m.) [8 PER 1324] It does not log the receipt of the written

statement until September 4, *after* the prosecutor filed charges against Mr. Tobias on August 22. [8 PER 1325, 1327] In any event, there is no evidence that the chronological record played any role in detaining or charging Mr. Tobias.

3. The written statement was included in the 600-plus page Murder Book that was provided to the prosecutor who decided to file charges against Mr. Tobias. There is no evidence that the prosecutor relied on the written statement in making that decision, or that he even reviewed it.

The answering brief also argues that Officer East may be held liable for fabrication based on his statements during the recorded interview, his efforts to assist the LAPD detectives in locating additional materials to help identify Mr. Tobias, and his help in obtaining a written statement from Mr. Negroe. But those actions were not unlawful. The only unlawful conduct attributed to Officer East was writing a fabricated statement. It is the written statement that Mr. Tobias must link to his injury. Because there is no evidence to support such a link, his fabrication claim lacks merit as a matter of law.

### 3.    Conclusion

The answering brief has not shown that the discrepancy between Officer East's statement that he was "thinking of" Mr. Tobias while watching the video, and his written statement that he was "fairly sure" was sufficient to give support a fabrication claim. Further, it does not cite to any evidence that Officer East's written statement was the cause in fact of Mr. Tobias's injury. If Officer East had not written his statement, Mr. Tobias would still have been arrested, charged, tried, and convicted. Because the lack of merit to Mr. Tobias's claims is apparent after construing all the evidence and every reasonable inference in his favor, this Court should reverse the District Court's decision, and direct that judgment be entered in favor of Officer East.

Dated: April 7, 2021

> Respectfully submitted,
>
> GUTIERREZ, PRECIADO & HOUSE, LLP
>
> /s/ <u>Calvin House</u>

# 4. Certificate of Compliance with Rule 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because

☒ this brief contains 4,157 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

☐ this brief uses a monospaced typeface and contains __ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App P. 32(a)(6) because:

☒ This brief has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Century Schoolbook font, *or*

☐ This brief has been prepared in a monospaced typeface using __ with __.

s/ Calvin House

Attorney for Appellant

Dated: April 7, 2021

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 7, 2021.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ <u>Calvin House</u>